# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING, CHEYENNE DIVISION

| | | |
|---|---|---|
| GLOBAL E. LLC. Dba PIONEER PARK MHC | : | **Civil No.** |
| | : | **NOTICE OF REMOVAL** |
| Plaintiff | | (State Circuit Court No. CV-2015-0077) |
| | : | (State District Court Case No. C-15-217-J) |
| MARTI  LUNDAHL and HOLLIE TELFORD | | (State District Court Case No. C-15-602-J) |
| | : | |
| Defendants | : | (Related to U.S. District Court case No. 15-CV-188-ABJ,  Honorable Alan Johnson presiding) |
| | : | |

TO:    THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING

PLEASE TAKE **NOTICE** THAT,   pursuant to 28 U.S.C. Sections 1331 and 1443, Defendants Marti Lundahl and Hollie Telford, hereby remove the above stated State actions pending before the Sweetwater County Circuit and District Courts, state of Wyoming  to the United States District Court for the District of Wyoming, Cheyenne Divison, where Defendants will be reviving an FHAA and ADA complaint before the Honorable Alan B. Johnson.   The federal grounds for this removal are as follows:

I.    LEGAL AUTHORITY AND FACTUAL BASIS FOR  REMOVAL

I.    It is unlawful to discriminate in the sale or rental, **or to otherwise make unavailable or deny, a dwelling to** any **renter . . . necause of a disability'** of that renter or any person associated with that renter. 42 U.S.C. § 3604(f) (I);   24 C.P.R. § 100.202(a).

2.    **It is unlawful to discriminate against any person in  the terms, conditions, or privileges of** sale **or rental of a dwelling,  or in the provision of services or facilities in connection with such dwelling,** because of a disability of that person. 42 U.S.C. § 3604(f) (2); 24 C.P.R. § 100.202(b).

3.    For  purposes  of  42 U.S.C. § 3604(f)(1)-(f)(2),  **discrimination includes the refusal to make a reasonable accommodation in rules, policies, practices, or**

1

services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f) (3)(B); 24 C.F.R. § 100.204(a).

      4.   It is unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any right granted or protected by Sections 803 to 806 of the Act. 42 U.S.C. § 3617; 24 C.P.R. § I 00.400(b).

      5.   42 U.S. Code § 3603:

        **(a) Application to certain described dwellings.** Subject to the provisions of subsection (b) of this section and <u>section 3607 of this title</u>, the prohibitions against discrimination in the sale or rental of housing set forth in <u>section 3604 of this title</u> shall apply:

        (1)   Upon enactment of this subchapter, to—

        (B) dwellings provided in whole or in part with the aid of loans, advances, grants, or contributions made by the Federal Government.

      6.   42 U.S. Code § 3604:

        (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

        (d) To represent to any person because of race, color, religion, sex, handicap, familial status, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

        (f) (1)   To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of—

        (A)   that buyer or renter,

        (B)   a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

        (2)   To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of—

        (A)   that person; or

        (B)   a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or

        (3)   For purposes of this subsection, discrimination includes—

        (A) a refusal to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises

        (B) a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to

afford such person equal opportunity to use and enjoy a dwelling; or

      7.    42 U.S. Code § 3617 - Interference, coercion, or intimidation
          It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

      8.    The ADA precludes discrimination in a public accommodation. 42 U.S.C. §§12101 *et seq.* A public accommodation is defined to include a "place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of the proprietor." 42 U.S.C. §12181(7)(A). **Under the ADA, no disabled person shall be discriminated against "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."** 42 U.S.C. §12182(a). The ADA prohibits the discrimination of the disabled as to public services and housing. 42 U.S.C. §12132.

      9.    Under the ADA,  "reasonable modifications in policies, practices, or procedures [must be made] when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. §12182(b)(2)(A)(ii).

      10.    Georgia v. Rachel, 384 U.S at 805, 86 S.Ct. At 1797, 16 L.Ed.2d at 941.  The defendants, Afro-americans  sought services in a public facility.  They were asked to leave and refused. The state of Georgia brought criminal trespass charges against the defendants.  The defendants removed their action to the federal court under § 1443 for inability to protect their federal rights under the civil rights act in the state court by the very fact of the criminal prosecution. We agree.  "The burden of having to defend the prosecutions is itself the denial of a right explicitly conferred by the Civil Rights Act of 1964."  28 USC § 1443.

      11.    Whatley, 399 F.2d at 524 (holding removal proper because defendants alleged that state court action sought to prevent conduct that Fair Housing Act gave them an "absolute right to carry out".  The Fair Housing Act, because it specifically prevents discrimination in housing,  is an "equal civil rights" statute and thus satisfies the first prong of the Georgia test.  See **Sofarelli v. Pinellas County, 931 F.2d 718, 724-25 (11th Cir. 1991)** (counterclaims under Fair Housing Act were properly removed).   Sofarelli is attached hereto as exhibit "1".   The second prong of Georgia is satisfied  and  removal is appropriate when the particular civil rights statute at issue "specifically confers on the defendants immunity from any state prosecution for exercising their civil rights under the statute. Wright, Miller & Cooper, supra, § 3728 at 189.   State statutes and rules that conflict with federal civil rights statutes provides a basis for removal under  28 USC § 1443.

12.    Efforts to prevent disabled persons from residing within a dwelling violated the FHAA.  United States v. Koch, 352 F. Supp. 2d 970, 976 (D. Neb. 2004); Neudecker v. Boisclair Corp., 351 F.3d 361, 364 (8th Cir. 2003) (per curiam) (where apartment managers threatened to evict a disabled tenant who complained of harassment, threats of eviction constituted an action in violation of the FHAA and ADA irrespective that the tenant ultimately moved out because of the eviction threats.).

13.    Title 24 C.F.R. 100.400(c)(2), provides that it is a violation of the FHAA to "[l]imit the use of privileges, services or facilities associated with a dwelling because of . . . handicap, familial status, . . . of an owner, tenant or a person associated with him or her," 24 C.F.R. 100.65(b)(4).  HUD's regulations clarify what housing rights the FHA created.  Regulations "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Chevron, 467 U.S. at 844.

14.    **NORTHSIDE REALTY ASSOCIATES, INC., et al., v.  CHAPMAN, et al., 411 F.Supp. 1195 (N.D.GA, 1976)** (efforts to violate the accommodation rule under the FHAA and ADA, serves ground for removak.)

## REMOVAL FACTS

1.    Plaintiffs are disabled persons under the Federal Housing Amendments Act and the American Disability Act.

2.    Plaintiffs had section 8 vouchers ported to Sweetwater County Wyoming to be close to the cancer hospital in Rock Springs Wyoming.

3.    Plaintiffs l ocated a mobile home owner in PIONEER PARK that would be willing to accept section 8 rental payments.  The Rock Springs Housing Authority signed a HAP contract with the owner of the mobile home unit.

4.    Plaintiff contacted the Housing Authority to interfere with Defendants section 8 vouchers as a competetive market manuever.  The Plaintiffs instructed the housing authority that they refused to sublease the mobile home lot to plaintiff, disabled persons, in violation of the accommodation rule under the FHA and the discrimination rules under the ADA.

5.    The housing authority terminated Defendants section 8 voucher for this expressed reason because the Park was refusing to grant a written consent for subleasing the mobile home lot. See exhibit "2" attached.

6.    The Plaintiffs brought an eviction action against Defendants for acting as tenants at sufferance because the Park would not execute a contract in writing granting sublease of the mobile home lot in question.

7.    Attached hereto as exhibit "3" are the relevant pre-trial orders in the eviction action indicating that the state of Wyoming did not have retaliatory eviction laws and the unlawful detainer actions did not permit for any affirmative defenses or counterclaims to be brought in the action.  As a result, the court entered a writ of restitution in violation of the FHA and  ADA.  Attached hereto as exhibit "4" is the restitution judgment.

8.    Defendants removed this action  while appeals were pending.


III.   CONCLUSION

WHEREFORE, Defendants pay that the state actions listed supra be removed to the United States District Court for the state of Wyoming,  the  honorable court of Alan B. Johnson, pursuant to 42 U.S.C. §§ 3601-3619, the  Federal Housing Act, because Defendants have charged Plaintiffs with  engaging in discriminatory housing practices in violation of 42 U.S.C. §§ 3604(f)(1), (1)(2), (1)(3)(B) and § 3617 of the Act, and for like discrimination under the  ADA.  Defendants will be requesting the following orders from this court after removal is sustained.

I.    Declare that the discriminatory housing and disability practices of Plaintiffs as set forth above violate the Fair Housing Act, as amended, 42 U.S.C. §§ 3601-3619 and the American Disability Act;

2.    Enjoin  Plaintiffs, their agents, officers, employees, and successors, and all other persons in active concert or participation with them, from discriminating because of disability of the Defendants in any aspect of the sale, rental, use, or enjoyment of a dwelling pursuant to  the FHA, 42 U.S.C. § 3612(g)(3), and the ADA 42 U.S.C. §12182(a).

3.    Enjoin Plaintiffs, their agents, officers, employees, and successors, and all other persons in active concert or participation with it, from coercing, intimidating, threatening,  or interfering with Complainants or any person in the exercise or enjoyment of, or on account of their having exercised or enjoyed, or on account of their having aided or encouraged any other person in the exercise or enjoyment of any right granted by the Act pursuant to 42 U.S.C. § 3612(g)(3) .

4.    Mandate Plaintiffs, their agents, officers, employees, and successors, and all other persons in active concert or participation with it, take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein and to prevent similar occurrences in the future;

5.   Award  such monetary  damages pursuant to 42 U.S.C. § 3613 as will fully compensate Defendants for damages caused by Respondents' discriminatory conduct.

Dated:   January 31, 2016

Marti Lundahl

Certificate of Service
I certify that I served the Plaintiffs
with this notice of removal on 1/31/2016
@   Micheal Stulken
512 Wilkes St #7A
Green River, WY 82935

1

United States Court of Appeals, Eleventh Circuit.

931 F.2d 718 (11th Cir. 1991)

# ⊞ SOFARELLI V. PINELLAS COUNTY

MICHAEL SOFARELLI, PLAINTIFF-APPELLANT, V. PINELLAS COUNTY, PINELLAS COUNTY SHERIFF DEPT., NORMAN HIBBING, ALFRED SWETAY, JEFFREY S. HARMAN, EDWARD D. CARLSON, JR., MARYTHERESE BANCROFT, DEFENDANTS-APPELLEES. NORMAN HIBBING, MARYTHERESE BANCROFT, EDWARD D. CARLSON, JR., JEFFREY HARMAN, ALFRED SWETAY, PLAINTIFFS-COUNTER-DEFENDANTS, APPELLEES, V. MICHAEL SOFARELLI, DEFENDANT-COUNTER-CLAIMANT, APPELLANT. • NOS. 90-3274, 90-3281. • UNITED STATES COURT OF APPEALS, ELEVENTH CIRCUIT. • APRIL 29, 1991. *719

Ward A. Meythaler, Tampa, Fla., for plaintiff-appellant.

Carol B. Abernathy, Clearwater, Fla., Jean H. Kwall, Largo, Fla., for defendants-appellees.

• APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA.

Before FAY, ANDERSON and MARKEY‾, Circuit Judges.

‾. Honorable Howard T. Markey, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

*720

ANDERSON, Circuit Judge:

This appeal involves two consolidated cases addressing whether appellant Michael Sofarelli should be permitted to transport a house by trailer through John's Parkway, a public roadway in Pinellas County, Florida. The first case was filed in Florida state court on September 19, 1989 by appellee Norman Hibbing seeking an injunction to prohibit Sofarelli from moving the house. Sofarelli subsequently removed this case to federal district court on September 25, 1989, alleging that Hibbing and other plaintiffs who had subsequently intervened in the lawsuit had violated his civil rights under 42 U.S.C.A. § 1983 (West 1981) and the Fair Housing Act. We will refer to this case as the "removed case."

Sofarelli filed the second lawsuit in federal court alleging identical claims under § 1983 and the Fair Housing Act and named as defendants Pinellas County (through its employee, the Pinellas County Sheriff), the Pinellas County Sheriff, Hibbing, Swetay, and the other named plaintiffs in the removed case to whom we will refer as the "neighbors." Sofarelli also sought to enjoin the defendants from interfering further with the move of the house. We will refer to this case as the "original federal case."

The district court denied Sofarelli's motions for injunctive relief and dismissed all claims under § 1983 and the Fair Housing Act. The district court declined to decide whether the right-of-way on John's Parkway is thirty feet or forty feet wide, permitting that issue to be resolved in proceedings pending in Florida state court or in the removed case which the district court remanded to state court.

We affirm the district court's dismissals of all claims against Pinellas County and the Pinellas County Sheriff under § 1983 and the Fair Housing Act. We also affirm its denial of injunctive relief against the county and sheriff. In addition, we affirm the dismissal of the § 1983 claims against Hibbing, Swetay and the neighbors. However, we vacate the dismissal of Sofarelli's claims against Hibbing, Swetay and their neighbors under the Fair Housing Act.

# [5] I. BACKGROUND

On September 16, 1989, Sofarelli loaded a house onto a trailer and moved it down various streets, pursuant to proper permits, in Pinellas County and Clearwater, Florida. Quite close to his destination, Sofarelli's progress was blocked on John's Parkway, a public roadway, by a vehicle

owned by Hibbing. The Pinellas County Sheriff refused to remove Hibbing's automobile and ordered Sofarelli to stop the move. The house currently remains on its trailer in the middle of John's Parkway. A genuine dispute exists between the parties as to whether the public right-of-way on John's Parkway is thirty feet or forty feet wide, and thus whether moving the house (which exceeds thirty feet in width) down the road would trespass on private property.

# [7] A. The Removed Case

On September 19, 1989, Hibbing filed suit in Pinellas County Circuit Court to enjoin permanently the house move and filed a motion for a temporary restraining order. The court conducted a hearing the next day at which Sofarelli agreed to Hibbing's request for an injunction prohibiting Sofarelli from trespassing because the move could be accomplished without crossing Hibbing's property. The court then denied Hibbing's motion for an injunction to stop the move.

On September 21, 1989, the day after the hearing, a number of Hibbing's neighbors — Alfred Swetay, Jeffrey S. Harman, Edward D. Carlson, Jr., and Marytherese Bancroft — intervened in the case, joining Hibbing's efforts to stop the move. That same day, an article in the St. Petersburg Times quoted Hibbing and Swetay as stating that they had racial motivations for halting the house move. As a result, Sofarelli removed the case to federal district court under 28 U.S.C.A. § 1443 (West 1973) based on a counterclaim that the plaintiffs' efforts to block the move were racially motivated and that such behavior violated *721 his civil rights under 42 U.S.C.A. § 1983 and under the Fair Housing Act. Hibbing subsequently filed a motion to remand the case back to state court, which was pending when the district court issued its final order in the case, which is the subject of this appeal.

# [10] B. The Original Federal Case

On September 25, 1989, Sofarelli filed suit in federal district court alleging identical claims under § 1983 and the Fair Housing Act not only against Hibbing, Swetay, and their neighbors, but also against Pinellas County and the Pinellas County Sheriff's Department. In addition, Sofarelli asked for a permanent injunction to prevent the defendants from interfering with the house move or with his use of John's Parkway under proper permits.

Sofarelli later filed motions for a temporary restraining order and a preliminary injunction to prohibit the defendants from impeding the house move so that he could move the house to its ultimate destination. Pinellas County responded by filing motions for a temporary restraining order and a preliminary injunction that would require Sofarelli to remove the house from John's Parkway. The magistrate judge denied both parties' motions for temporary restraining orders but conducted a hearing on October 11, 1989 to consider the motions for preliminary injunctions. The magistrate judge subsequently issued a report and recommendation that both parties' motions for preliminary injunctions be denied.

Hibbing and the Pinellas County Sheriff each filed a motion to dismiss the original federal case. Pinellas County and Edward Carlson, one of the neighbors, each filed a motion to strike and a motion to dismiss.

On March 22, 1990, the district court entered a consolidated order ruling on the pending motions in both the removed case and the original federal case. The court granted Hibbing's motion to remand the removed case back to Florida state court. 733 F. Supp. 1470 (/case/hibbing-v-sofarelli) ↪ . In the original federal case, the court granted appellees' motions to dismiss, denied all other motions, and entered judgment for the defendants. Sofarelli now appeals both the remand of the removed case and the dismissal of the original federal case.

# [15] II. DISCUSSION

Sofarelli presents similar claims in both the removed case and the original federal case. We will address each of his substantive claims in turn and explain when necessary whether our resolution of that claim applies to one or both of the consolidated cases.

# [17] A. Claims Dismissed Under Rule 12(b)(6)

The district court dismissed all of Sofarelli's claims under § 1983 and the Fair Housing Act pursuant to Fed.R.Civ.Proc. 12(b)(6) for failure to state a claim upon which relief can be granted. In order to dismiss a claim under Rule 12(b)(6), the district court must find that the plaintiff can prove no set of facts which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (/case/conley-v-gibson-6051-28#p45) , 78 S.Ct. 99, 101-02 (/case/conley-v-gibson-6051-28#p101) , 2 L.Ed.2d 80

(/case/conley-v-gibson-6051-28)     (1957). In making that determination, the court must view the allegations of the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232    (/case/scheuer-v-rhodes-krause-v-rhodes-8212-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-1318)  ,    94    S.Ct.    1683 (/case/scheuer-v-rhodes-krause-v-rhodes-8212-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-1318)    , 40 L.Ed.2d 90 (1947).

# [19] 1. *Claims Under the Fair Housing Act*

Sofarelli alleges that Pinellas County (through its employee, the Pinellas County Sheriff), the Pinellas County Sheriff, Hibbing, Swetay, and other participating members of Hibbing's community to whom we will refer as the "neighbors," violated his civil rights under the Fair Housing Act, 42 U.S.C.A. §§ 3604 and 3617. Sofarelli argues that his plan to move the house onto a lot abutting John's Parkway and potentially to sell the house and lot to a minority purchaser constitutes aiding or encouraging that prospective purchaser's exercise of the right to housing under § 3604.[1] Therefore, *722 Sofarelli contends that appellees' efforts to prevent the move of the house violate § 3617[2] as unlawful interferences with his aid and encouragement of the purchaser's right to obtain the housing to which he is entitled under § 3604.

1. 42 U.S.C.A. § 3604 (West Supp. 1990) provides that it shall be unlawful —

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

(c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

2. Section 3617:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any rights granted or protected by section 3603, 3604, 3605, 3606 of this title.

42 U.S.C.A. § 3617 (West Supp. 1990).

We will first address Sofarelli's Fair Housing Act claims against Hibbing, Swetay and their neighbors. In order to prevail under the Act, Sofarelli has to establish that race played some role in the actions of Hibbing, Swetay and the neighbors. *See United States v. Mitchell,* 580 F.2d 789, 791-92 (/case/united-states-v-mitchell-51#p791)     (5th Cir. 1978).[3]

3. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (/case/bonner-v-city-of-prichard-ala#p1209)     (11th Cir. 1981).

We find that Sofarelli may be able to prove a set of facts which would establish violations of the Fair Housing Act. Sofarelli alleges that members of Hibbing's community committed certain actions — such as leaving a note threatening "to break [Sofarelli] in half" if he did not get out of the neighborhood and running up to one of Sofarelli's trucks, hitting it, shouting obscenities and spitting at Sofarelli — which would clearly constitute coercion and intimidation under § 3617. In addition, Sofarelli presented evidence to the district court which suggests that Hibbing, Swetay, and their neighbors had racial motivations for these actions. An article in the September 21, 1989 issue of the St. Petersburg Times quotes Swetay as stating, "What's stopping him (Sofarelli) from selling it to coloreds? . . . Once that happens, the whole neighborhood is gone." Marie Tessier, *Tug of War Over House Turns Racial,* St. Petersburg Times, Sept. 12, 1989. The article states that both Hibbing and Swetay "said they don't want the house on their block partly because they're afraid black people might move in." *Id.*

The statements in the newspaper suggest racial animus on the part of Hibbing and Swetay and preclude Rule 12(b)(6) dismissal of Sofarelli's claims against them under the Fair Housing Act. If Sofarelli can prove, as the quotations in the newspaper article suggest, that Hibbing and Swetay

interfered with the house move in order to prevent someone of a particular race from being able to move into their neighborhood, Sofarelli would be able to establish a colorable claim against them under the Fair Housing Act.

The dismissal was also improper as to the neighbors — Jeffrey S. Harman, Edward D. Carlson, Jr., and Marytherese Bancroft — because they purportedly acted in concert with and for the same reasons as Hibbing and Swetay. Therefore, the dismissals of the Fair Housing Act claims against Hibbing, Swetay, and the neighbors in the removed case and the original federal case are vacated.

We agree with the district court, however, that Sofarelli fails to state a claim under the Fair Housing Act against Pinellas County and the Pinellas County Sheriff. Sofarelli's only theory of liability against Pinellas County is based upon the actions of its employee, the Pinellas County Sheriff,[4] so we must examine the sheriff's *723 actions in assessing the viability of Sofarelli's claims against both the sheriff and the county.

> 4. Sofarelli never alleged other legally recognized theories of recovery against Pinellas County, such as a policy or custom of discrimination.

Under *Mitchell,* 580 F.2d at 791-92 (/case/united-states-v-mitchell-51#p791) , Sofarelli must establish that race played some role in the actions of the sheriff to recover under the Fair Housing Act. Sofarelli concedes that there is absolutely no evidence of racial motivation on the part of the sheriff. Appellant's Brief at 49. Because Sofarelli concedes that he "is not aware of and does not allege" any claims that the Pinellas County Sheriff acted with racial animus, *id.,* Sofarelli fails to state a claim under the Fair Housing Act. Therefore, we affirm the dismissals of the Fair Housing Act claims against both Pinellas County and the Pinellas County Sheriff in the original federal case.

# [27] 2. *Claims Under 42 U.S.C.A. § 1983*

Sofarelli alleges that all of the appellees acted in violation of his rights under the due process and equal protection clauses of the Fourteenth Amendment, giving rise to a claim under 42 U.S.C.A. § 1983 (West Supp. 1990). We will first address Sofarelli's claims against Pinellas County and the Pinellas County Sheriff. Sofarelli argues that the Pinellas County Sheriff acted, on behalf of Pinellas County, to deny Sofarelli's civil rights by refusing to remove the vehicle obstructing his path and by refusing to help him complete the move of the house pursuant to proper permits.

Sofarelli's theory of liability against Pinellas County and the sheriff is based upon the sheriff's admitted failure to remove vehicles which were blocking Sofarelli's path. Because, as noted above, Sofarelli has conceded that the county and sheriff had no racial animus, Sofarelli's § 1983 claim against the county and the sheriff is limited to a substantive due process claim, i.e., that their actions were arbitrary and capricious. Given the good faith dispute regarding ownership of the property on which the obstructing vehicle was located, and given the undisputed fact that the sheriff and the county would remove the obstructing vehicles if they were on the public right-of-way and will do so as soon as a court resolves the dispute as to who owns the property, we conclude that Sofarelli can prove no set of facts which would establish that the sheriff acted arbitrarily or capriciously in refusing to remove the obstructing vehicles. Therefore, we affirm the dismissal of the Sofarelli's § 1983 claims against Pinellas County and the Pinellas County Sheriff in the original federal case.

Sofarelli also contends under § 1983 that Hibbing, Swetay and their neighbors violated his civil rights. There can be no such claim, however, because their behavior as private individuals does not rise to the level of state action. In addition, because we find that the sheriff's refusal to remove vehicles from Sofarelli's path was not improper state action by Pinellas County, there can be no allegation that Hibbing, Swetay and their neighbors conspired with the county to violate Sofarelli's civil rights under § 1983. Accordingly, we affirm the dismissal of Sofarelli's § 1983 claims against Hibbing, Swetay, and the neighbors in both the removed case and the original federal case.

# [31] B. Denial of Injunctive Relief

Sofarelli alleges that the district court abused its discretion in refusing to grant an injunction prohibiting Hibbing, Swetay, and the neighbors from interfering with the move and requiring the Pinellas County Sheriff to provide any assistance necessary to complete the move. The district court denied motions for both a temporary restraining order and a preliminary injunction. We affirm with respect to the sheriff and Pinellas County, but vacate with respect to Hibbing, Swetay and the neighbors.

In order to obtain a preliminary injunction, Sofarelli must establish each of the following factors:

(1) a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause to the opposing party; ¬724 and (4) that the injunction, if issued, would not be adverse to the public interest.

*United States v. Jefferson County*, 720 F.2d 1511, 1519 (/case/united-states-v-jefferson-county-2#p1519) (11th Cir. 1983). A preliminary injunction is an extraordinary remedy and should not be granted unless the movant "`clearly carries the burden of persuasion'" on all four elements. *Id.* (quoting *Canal Authority v. Callaway*, 489 F.2d 567 (/case/canal-authority-of-state-of-fla-v-callaway) (5th Cir. 1974)). If any element is not proven, there is no need to address the others. *Id.* The issuance or denial of injunctive relief is within the discretion of the district court and will not be disturbed absent an abuse of discretion or action contrary to equity. *Id.*

The district court correctly denied Sofarelli's motions for injunctive relief as to Pinellas County and the sheriff. We find *supra* that Sofarelli fails to state a claim against either Pinellas County or the Pinellas County Sheriff under either 42 U.S.C.A. § 1983 or the Fair Housing Act. Indeed, Sofarelli concedes that he "is not aware of and does not allege" any claims that Pinellas County or the Pinellas County Sheriff acted with racial animus. Appellant's brief at 49. Consequently, Sofarelli cannot demonstrate that he has "a substantial likelihood of prevailing on the merits" against the county or the sheriff and, therefore, cannot obtain an injunction against either of them.

With respect to Hibbing, Swetay and the neighbors, the district court denied injunctive relief based on its erroneous dismissal of the Fair Housing Act claim. The district court has not addressed Sofarelli's claim against Hibbing, Swetay and the neighbors in the posture of a well pleaded Fair Housing Act claim, and we prefer that it be addressed in the first instance by the district court.

# [37] C. Remand of the Removed Case

Sofarelli argues that the district court abused its discretion in granting Hibbing's motion to remand the removed case back to state court. Before we can review the propriety of the remand order, we must determine whether the order is appealable.

# [39] 1. *Jurisdiction to Review the Remand Order*

In general, remand orders are not immediately appealable. 28 U.S.C.A. § 1447(d) (West Supp. 1990). We agree with Sofarelli's contention, however, that the instant remand order is appealable because the case was initially removed from state court pursuant to 28 U.S.C.A. § 1443 (West Supp. 1990). Section § 1447(d) provides as follows:

> (d) An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, *except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal* or otherwise. (emphasis added)

Section 1447(d) expressly permits appellate review of remand orders in cases that were originally removed to federal court under § 1443.

This case was properly removed under § 1443.[5] The case originally filed against Sofarelli in state court involved issues of property ownership and land use rights, issues appropriately addressed by state courts. Sofarelli subsequently suspected, however, that the plaintiffs had racial motivations for attempting to enjoin him from completing the house move. Accordingly, he counterclaimed that the lawsuit filed in state court by Hibbing was an *725 effort to coerce, intimidate or deter him from providing housing in violation of the Fair Housing Act. The parties do not dispute that this allegation falls within the United States Supreme Court's holding in *State of Georgia v. Rachel*, 384 U.S. 780 (/case/georgia-v-rachel)  , 86 S.Ct. 1783 (/case/georgia-v-rachel)  , 16 L.Ed.2d 925 (/case/georgia-v-rachel)  (1966), that removal under § 1443 is proper when a lawsuit filed in state court is itself the act by which the movant's civil rights are violated. *See also Northside Realty Assoc., Inc. v. Chapman*, 411 F. Supp. 1195 (/case/northside-realty-associates-inc-v-chapman)  (N.D. Ga. 1976) (applying *Rachel* to hold that lawsuits filed in state court which violate the defendant's rights under the Fair Housing Act are properly removable under § 1443). Having determined that the case was properly removed under § 1443, we have jurisdiction to review the propriety of the remand order under § 1447(d).

5. 28 U.S.C.A. § 1443 provides as follows:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

> (2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

# [43] 2. *Review of the Remand Order*

The district court remanded the case based upon a determination that Sofarelli "failed to show he is eligible to properly assert a cause of action under the Fair Housing Act" so that the only remaining issues in the case involved state law. Order Granting Motions to Dismiss and to Remand, Record Excerpts, Case No. 90-3281 at 10. A claim under the Fair Housing Act presents a federal question for purposes of federal question jurisdiction. Therefore, whether the remand order was proper depends upon whether the district court erred in determining that Sofarelli failed to state a claim under the Fair Housing Act.

In view of our holding *supra* that Sofarelli stated a valid claim under the Fair Housing Act against Hibbing, Swetay and their neighbors, the district court erred in finding that no federal question remained in the case. Therefore, the district court's remand order is vacated and the removed case will remain in federal court.[6]

> 6. The parties contest whether the district court abused its discretion in abstaining from deciding the width of the right-of-way. We doubt, however, that the district court exercised its abstention power. Rather, having dismissed all of Sofarelli's claims under Rule 12(b)(6), thus leaving no federal question, the district court exercised its discretion not to entertain pendent state claims and remanded the case to state court. Our conclusion that the district court erred in dismissing Sofarelli's Fair Housing Act claim against Hibbing, Swetay and the neighbors means, of course, that there is federal question jurisdiction over the Fair Housing Act claim, and that the district court's remand order was erroneous. The district court has not addressed the abstention issue in this posture, and we prefer that it be addressed in the first instance by the district court.

# [46] III. CONCLUSION

For the foregoing reasons, we AFFIRM in part, VACATE in part, and REMAND for further proceedings consistent with this opinion.

Contact (mailto:contact@casetext.com)   Features (/features)   Terms (/terms) (https://twitter.com/casetext)
Privacy (/privacy)   About (/about)   Jobs (/jobs)   Press (/press)   Students (/students)

(https://www.facebook.com/casetext)

© 2016 Casetext, Inc.
Casetext, Inc. and Casetext are not attorneys or a law firm and do not provide legal advice.

2

*Rock Springs Housing Authority*
*233 C Street*
*Rock Springs, Wyoming 82901*
*(307) 352-1471*
*Fax: (307) 352-1474*



July 7, 2014

RE:     Housing Assistance contract Termination

Tenant Name:   Holli Lundahl and Marti Lundahl.
Address:       935 Wilderness Trail
               Green River, WY 82935

The Lease agreement with Pioneer Park states in section (I)
Assignment or Sublet of the lease agreement it states that the Resident shall not sublet or assign any part of said Premises without the advanced written consent of the Park.

Rock Springs Housing Authority will not make any HAP payments to you after 07/01/2014. Should the tenant choose to remain in the unit after that date, the tenant will be responsible for the full contract rent.

Should you have any questions or concerns, please contact me at (307) 352-1471

Sincerely,

Hollie Portillo
Housing Technician
Rock Springs Housing Authority

Cc: Holli Lundahl and Marti Lundahl
    Section 8 Tenants

3

IN THE CIRCUIT COURT OF THE THIRD JUDICIAL DISTRICT

SWEETWATER COUNTY, GREEN RIVER, WYOMING

| | | |
|---|---|---|
| GLOBAL E, LLC, | ) | BEFORE: TOM DEERING |
| | ) | CIRCUIT COURT MAGISTRATE |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | DOCKET NO. CV-2015-077-P |
| | ) | |
| HOLLIE TELFORD, | ) | |
| KIMBERLY VOGT | ) | |
| MARTI TELFORD LUNDAHL | ) | |
| Defendant. | ) | |

<u>ORDER AFTER PRETRIAL CONFERENCE</u>

THIS MATTER came before the Court for a final pretrial conference on March 12, 2015. The Plaintiff appeared through counsel Michael Stulken and the defendant Hollie Telford appeared pro se. The Court has considered the pleadings, pretrial memoranda, motions, and arguments of counsel, and finds that an Order After Pretrial Conference should issue.

NOW THEREFORE IT IS ORDERED:

1.    **Trial Schedule**

(a)    This matter is currently set for trial on March 19, 2015, at 9:00 a.m., before a jury of six (6) plus one (1) alternate. One (1) day has been set aside for trial. Counsel are reminded that the day of trial is not a full trial day for purposes of presenting evidence. The Court will endeavor to conduct jury selection as expeditiously as reasonably possible. The general trial hours will be from 9:00 a.m. to 5:00 p.m. with an hour and fifteen minutes for lunch and breaks as the Court deems appropriate. The Court will manage the trial with the objective of concluding the evidence by mid-afternoon, therefore allowing time for closing instructions and arguments and submitting the case to the jury for their deliberations.

(b)    <u>Mr. Stulken and Ms. Telford will appear at 8:15 a.m. on March 19, 2015.</u> At that time the Court will address any preliminary matters, including a jury instruction conference regarding instructions nos. 1-8, to be given before opening statements, outside of the presence of the jury.

(c)    The parties shall review the Court's instructions prior to the day of trial and be prepared to approve or object to these instructions and submit any additional or alternate instructions to the Court at the time of the jury instruction conference, which the parties agreed should be conducted during lunch (except for instructions nos. 1-8, to be given before opening statements, which will be addressed before trial).

(d)    <u>Court shall begin promptly at announced times, with or without counsel.</u>

(e)    Each of the parties shall receive thirty (30) minutes for opening statements and closing arguments. The Plaintiff shall reserve time for rebuttal closing arguments.

(f)    No other time restrictions or time budget limitations will be imposed by the Court, (unless the Court finds that the trial will not be completed within the trial day allotted). In the event that time restrictions or time budget limitations are imposed, no constitutional rights or due process will be affected.

(g)    A final jury instruction conference will be conducted during the lunch hour during the trial.

2.    **Motions**

(a)    Ms. Lundahl filed an answer and demand for jury trial. By previous order, the Court denied Ms. Lundahl's motion for a greater than three month continuance. At the pretrial

provided by law, including imprisonment, payment of sanctions, and payment of costs and attorney's fees.

(c)     Jury selection and instructions to jurors before opening statements were not discussed. The Court anticipates giving 2013 WCPJI 1.02 - General Instructions Before Opening Statements, 1.02A - Jurors Will Be Permitted to Take Written Notes During the Course of Trial, 1.02G - Written Questions by Jurors for Witnesses Permitted, (combined) 2014 WCrPJI 1.13 Juror Notebooks and 1.12 Jury Instructions for Jurors, and (verbally only) 2014 WCrPJI 1.09A - Cautionary Instruction: Recesses.

(d)     If counsel fail to strictly comply with the requirements and prohibitions contained in Rule 47(c) of the Wyoming Rules of Civil Procedure, the Court may assume the examination and preclude the offending party from further examination and violation of this provision of this order of the Court may be considered and dealt with as contempt of this Court.

6.     **Jury Instructions**

(a)     Legal Standard. "Two major principles of our system of justice are unwavering adherence to the rule of law, and trust in juries to resolve factual disputes. Correct instructions on the law are the thread that binds those two principles together." *Hereford v. State*, 2015 WY 17, ¶ 14, 342 P.3d 1201, 1205 (Wyo. 2015) (quoting *Andersen v. State*, 2014 WY 88, ¶ 14, 330 P.3d 256, 260 (Wyo. 2014)). Jury instructions should provide a "foundational legal understanding to enable a reasoned application of the facts to the law." *Andersen*, ¶ 14, 330 P.3d at 260 (citing *Walker v. State*, 2013 WY 58, ¶ 31, 302 P.3d 182, 191 (Wyo. 2013)). They should "cover all relevant issues in order to assure that the jury is not left to decide the case on some other and perhaps improper basis." *Id.* Jury instructions should leave no doubt as to the circumstances under which a plaintiff can be found to prevail. *Jealous v. State*, 2011 WY 171, ¶ 10, 267 P.3d 1101, 1104 (Wyo. 2011). "Instructions are sufficient if they correctly state the law, they are not misleading, and they permit the parties to argue their respective theories of the case." *Pina v. Christensen*, 2009 WY 64, ¶ 5, 206 P.3d 1298, 1299 (Wyo. 2009).

It is important to note that for the jury to be instructed on a legal theory, it "must be recognized by statute or case law of Wyoming." Therefore, "instructions which do not contain a proper statement of the law are properly refused." *Chavez-Becerra v. State*, 924 P.2d 63, 67 (Wyo. 1996) (citing *DeLeon v. State*, 896 P.2d 764, 768 (Wyo. 1995)). An instruction which does not present a legally cognizable defense is properly refused. *Id.* (citing *Bouwkamp*, 833 P.2d at 491; *Phillips v. State*, 760 P.2d 388, 390 (Wyo. 1988)).

"The trial court is not obligated to give an instruction offered by a party as long as the jury is adequately instructed on the law as it pertains to that case." *McGuire v. Solis*, 2005 WY 129, ¶ 23, 120 P.3d 1020, 1026 (Wyo. 2005). The trial court must give an instruction offered by a party which is (1) properly requested, (2) supported by the evidence, (3) contains a correct statement of law, (4) and is not otherwise covered in the instructions. *Chavez-Becerra*, 924 P.2d at 67 (citing *Olsen v. State*, 797 P.2d 544, 549 (Wyo. 1990)). However, a defendant is not entitled to a particularly worded instruction where the instructions given cover the substance of the requested instruction. The trial court has "extensive discretion in tailoring jury instructions, provided that they correctly state the law and fairly and adequately cover the issues presented." *Id.* at ¶ 8, 206 P.3d at 1300.

Statutory language is not necessarily appropriate for a jury instruction. "Statutory language is really an abstract proposition of law, and is not made to apply directly to a case on trial." *Pina v. Christensen*, 2009 WY 64, ¶ 15, 206 P.3d 1298, 1302 (Wyo. 2009). Instead, instructions should adequately and clearly advise the jury of the applicable law, using simple and direct language which is understandable to a lay jury. *See Hannifan v. Am. Nat. Bank of Cheyenne*, 2008 WY 65, ¶ 34 n. 2, 185 P.3d 679, 692 n. 2 (Wyo. 2008).

(b)     The Court's jury instructions, nos. 1-18, and the verdict form, are attached hereto.

(c)     The Court's Instruction No. 15 is intended to be a plain English statement of the law. It is drawn from *Hitshew v. Rosson*, 41 Wyo. 509, 287 P. 316, 319 (1930); *Lawer v. Mitts*, 33 Wyo. 249, 238 P. 654, 660 (1925); *Brecheen v. Lofaro*, 559 F. App'x 723, 731 (10th Cir. 2014); *Lee v. Wallace*, 2010-Ohio-250, ¶ 20, 186 Ohio App. 3d 18, 22, 926 N.E.2d 328, 331 (interpreting statute similar to Wyoming statute); *Mark v. Long*, 2009-Ohio-581, ¶ 11, 180 Ohio App. 3d 832,

(Second) of Contracts § 261 (1981) ("Where, after a contract is made, a party's performance is made impracticable...") (emphasis added).

As noted in the Court's order granting a limited continuance, eviction is a summary procedure intended to give landowners a summary remedy to regain possession of their property. *Diamond B Servs., Inc. v. Rohde*, 2005 WY 130, ¶ 22, 120 P.3d 1031, 1040 (Wyo. 2005) (*citing Hurst v. Davis*, 386 P.2d 943, 949 (Wyo. 1963)). Forcible entry and detainer proceedings relate solely to the issue of which party presently has the right to possess the property. *See Cuyahoga Metro. Hous. Auth. v. Jackson*, 67 Ohio St. 2d 129, 130-31, 423 N.E.2d 177, 178-79 (1981) ("Forcible entry and detainer ... is a summary proceeding [where a court can] ... order restitution of the premises to the landlord. This is a civil remedy provided by statute and intended to affect only the question of the present right to possess real property. The purpose of the forcible entry and detainer statutes is to provide a summary, extraordinary, and speedy method for the recovery of possession of real estate in the cases especially enumerated by statute") (*superseded by rule on other grounds as stated in Miele v. Ribovich*, 2000-Ohio-193, 90 Ohio St. 3d 439, 739 N.E.2d 333); *see also Fenner v. Parkinson*, 69 Ohio App. 3d 210, 213, 590 N.E.2d 339, 340 (1990) *and Kelly Midway Supply, Inc. v. Cotter*, No. 91-L-001, 1991 WL 233823, at *4 (Ohio Ct. App. Nov. 8, 1991) (both interpreting Ohio Rev. Code Ann. § 1923.02(A)(5), substantially equivalent to Wyo. Stat. Ann. § 1-21-1002(a)(v)).

It's not within the province of this Court to decide whether or not the contract is impractical, unconscionable, or otherwise illegal. Ms. Telford's Exhibits 6 and 7 indicate that was a subject of a prior district court case. Some states allow forcible entry and detainer suits to be brought on the grounds of breach of contract. *See* Ohio Rev. Code Ann. § 1923.02(A)(9) (West 2015) (forcible entry and detainer proceedings may be brought "against tenants who have breached an obligation imposed upon them by a written rental agreement"). Parenthetically, it seems to stand to reason that contract defenses like impracticality and unconscionability may apply to a forcible entry and detainer claim premised upon a tenant's breach of contract. But they are not defenses to the Plaintiff's claim; the Plaintiff's claim is that after Ms. Lundahl rescinded the written contract she signed, no further contract was created, so the Defendants currently have no contract, no tenancy, no legal right to occupy or possess the land located at 935 Wilderness Trail, Green River, Wyoming. If the Plaintiff proves there is no contract, it is logically impossible to raise as a defense that the (non-existent) contract is illegal.

The Court concludes that the Defendants' position that the Plaintiff's written contract is impractical, unconscionable, or otherwise illegal is not legally cognizable in this case. Accordingly, the jury will not be instructed on those issues.

(i)     Retaliatory eviction. A majority of states have legislatively recognized a retaliatory eviction defense. Phillip Raymond, *Retaliatory Eviction and Periodic Tenants in Washington*, 4 Seattle U. L. Rev. 415 n. 1 (1981).[2] A minority of states have adopted a common law affirmative defense of retaliatory eviction. *See id.*; *Tenant's Rights and Remedies Against Retaliatory Eviction by Landlord*, 45 Am. Jur. Proof of Facts 3d 375 at § 2 (Originally published in 1998; updated 2015) (*citing Edwards v. Habib*, 397 F.2d 687 (D.C. Cir. 1968) (tenant's report of housing code violations); *Dickhut v. Norton*, 45 Wis. 2d 389, 173 N.W.2d 297 (1970) (tenant's report of housing code violations) (*citing Edwards v. Habib*).

There are two threshold problems with instructing the jury on retaliatory eviction as an affirmative defense.

First, it is not within the province of this Court to recognize new claims or defenses foreign to Wyoming law. Under our common law system of orderly justice, that function is reserved for the Supreme Court. A defendant

> is entitled to have the jury instructed on a defense theory if a timely submission is made of an instruction that correctly states the law and is supported by the evidence. **The defense must be recognized by statute or case law of Wyoming.** Thus, instructions which do not contain a proper statement of the law are properly refused.

---

[2] Accessed at http://digitalcommons.law.seattleu.edu/sulr/vol4/iss2/7/ on March 16, 2015.

and conditions of the agreement between the parties in relation to the amount and time of payment of rent. If the trial is by jury the verdict shall contain a finding of these facts and the court shall recite such findings in the docket entry of proceedings. ...

Wyo. Stat. Ann. § 1-21-1008 (LexisNexis 2013). Similarly:

... If the jury finds the complaint true they shall render a general verdict against the defendant, and if untrue, a general verdict in favor of the defendant. If true in part, the verdict shall set forth the facts they find true.

Wyo. Stat. Ann. § 1-21-1009 (LexisNexis 2013). None of the prescribed findings relate to affirmative defenses.

Wyoming statutes do create one retaliatory eviction defense. The Wyoming Safe Homes Act, Wyo. Stat. Ann. §§ 1-21-1301 through 1-21-1304, pertinently provides:

(a) In any action brought by a landlord against a tenant to recover rent for breach of lease, the tenant shall have an affirmative defense and not be liable for rent for the period after which a tenant vacates the premises owned by the landlord and covered by the lease, if by a preponderance of the evidence, the court finds that:

[the tenant or a household member was under a credible imminent threat of domestic abuse or sexual violence, and gave notice]

(b) In any action brought by a landlord against a tenant to recover rent for breach of lease, the tenant shall have an affirmative defense and not be liable for rent for the period after which a tenant vacates the premises owned by the landlord and covered by the lease, if by a preponderance of the evidence, the court finds that:

[the tenant or a household member was a victim of domestic abuse or sexual violence, and gave notice or could not]

(c) A landlord may not terminate a tenancy based solely on the tenant's or applicant's or a household member's status as a victim of domestic abuse or sexual violence. This subsection does not prohibit adverse housing decisions based upon other lawful factors within the landlord's knowledge.

Wyo. Stat. Ann. § 1-21-1303 (LexisNexis 2013).

Statues must be construed as a whole. *In re Estate of Scherer*, 2014 WY 129, ¶ 13, — P.3d — (Wyo. 2014). When a statute is clear and unambiguous, it is applied as written, giving effect to its plain and ordinary meaning.. *Id.* Courts "presume that statutes are enacted by the legislature with full knowledge of existing law" and therefore the "omission of words from a statute is considered to be an intentional act by the legislature, and ... court[s] will not read words into a statute when the legislature has chosen not to include them." *Id.*, ¶ 17.

Wyoming's forcible entry and detainer statutes are clear and unambiguous. They do not provide a retaliatory eviction affirmative defense except under the Wyoming Safe Homes Act. The Court presumes that when the legislature enacted the Wyoming Safe Homes Act, it did so with full knowledge that there is no other statutory retaliatory eviction defense and intentionally omitted to enact any additional retaliatory eviction affirmative defense. The Court does not read into the statute a defense the legislature has chosen not to include.

The Court concludes that the Defendants' retaliatory eviction defense is not legally cognizable in Wyoming. Accordingly, the jury will not be instructed on those issues.

(j)   Ms. Telford also makes an argument the nub of which seems to be that it is unfair for the forcible entry and detainer statutes, Wyo. Stat. Ann. §§ 1-21-1001 through 1-21-1016, to apply to mobile home lots because of the logistical difficulty and expense involved with moving a mobile home if a writ of restitution is issued. Wyoming's forcible entry and detainer statutes do not make special provisions for mobile home lots. Some states do. *Cf.* Ohio Rev. Code Ann. § 1923.12 (West 2015). The Court expresses no view on whether Wyoming statutes are "fair." That is not within the province of this Court. The legislature, not the Court, makes the law.

7.     Special Requirements

(a)     The Court will not allow any delays as a result of failure of technology. Use of technology is at the offering party's own risk and the Court will not allow any delays a result of technical difficulties.

**Instruction No. 14**

In this action, the Plaintiff has the burden of proving, by a preponderance of the evidence, the following:

The Defendants are settlers or occupiers of the land located at 935 Wilderness Trail, Green River, Wyoming, without color of title, to which the Plaintiff has the right of possession.

If you find from your consideration of all the evidence that this has been proved beyond a preponderance of the evidence, then you should find the Plaintiff's complaint is true.

If, on the other hand, you find from your consideration of all the evidence that this has not been proved by a preponderance of the evidence, then you should find the Plaintiff's complaint is not true.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it.

Given:

_____
**Circuit Court Magistrate**

**Instruction No. 15**

"Settler or occupier of lands or tenements, without color of title, to which the plaintiff has the right of possession" is a definition in the statutes of the State of Wyoming which identifies a legal category of people that may be evicted. This legal category includes a "tenant at sufferance."

"Tenant at sufferance" means someone who originally had the legal right to occupy or possess property, but continues to occupy or possess property after his or her legal right to do so has ended.

"Tenancy" means a legal right to occupy or possess property created by a contract.

A contract that creates a tenancy is sometimes called an agreement, a lease, lease agreement, or a rental agreement.

**Given:**

_____
**Circuit Court Magistrate**

4

IN THE CIRCUIT COURT OF THE THIRD JUDICIAL DISTRICT

SWEETWATER COUNTY, GREEN RIVER, WYOMING

| | | |
|---|---|---|
| GLOBAL E, LLC, | ) | BEFORE: TOM DEERING |
| Plaintiff, | ) | CIRCUIT COURT MAGISTRATE |
| vs. | ) | |
| HOLLIE TELFORD and | ) | DOCKET NO. CV-2015-077-P |
| MARTI TELFORD LUNDAHL | ) | |
| Defendants. | ) | |

## JUDGMENT OF RESTITUTION

THIS MATTER came on regularly for trial in this Court before a jury of six, commencing March 19, 2014, the Plaintiff appearing through counsel of record, Hollie Telford appearing in person, and Marti Telford Lundahl not appearing. The Court submitted the case to the jury, and the jury rendered a general verdict in favor of the Plaintiff. The verdict being complete and in proper form, the Court hereby directs entry of judgment upon the verdict and renders a general judgment in favor of the plaintiff for restitution of the premises and costs, pursuant to Wyo. Stat. Ann. §§ 1-21-1008 and 1-21-1009.

NOW THEREFORE IT IS ORDERED, ADJUDGED AND DECREED that the verdict is complete and accepted by the Court;

JUDGMENT IS HEREBY ENTERED in favor of Global E, LLC, and against Hollie Telford and Marti Telford Lundahl;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Global E, LLC, shall have restitution of the mobile home lot located at 935 Wilderness Trail, Green River, Wyoming, from Hollie Telford and Marti Telford Lundahl; and

IT IS FINALLY ORDERED, ADJUDGED AND DECREED that Global E, LLC, shall recover costs from Hollie Telford and Marti Telford Lundahl in the amount of $180.00.

Done this 25 day of March, 2015.

_____
Thomas O. Deering
Circuit Court Magistrate
Third Judicial District

FILED
Circuit Court- GR
MAR 2 5 2015
Sweetwater County, WY
Third Judicial Dist.

_____
Craig L. Jones
Circuit Court Judge
Third Judicial District