U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 FEB 25   AM 11 42

STEPHAN HARRIS, CLERK
CHEYENNE

Hollie Telford aka Hollie Lundahl
935 Wilderness Trail
Green River, Wyoming 82935

## UNITED STATES DISTRICT COURT FOR THE STATE OF WYOMING
### CHEYENNE DIVISION

|  |  |  |
|---|---|---|
| MARTI LUNDAHL and HOLLIE TELFORD | : | **Civil No. 2:15-cv-00188- ABJ** |
| CROSS PLAINTIFFS | : | **VERIFIED CROSS COMPLAINT / COUNTER CLAIM** |
| vs. | : |  |
| GLOBAL E. LLC d/b/a PIONEER PARK LLC; MICHEAL STULKEN; ANN CLAYTON; JUDY CIRRILLO; VERIZON COMMUNICATIONS INC.,; ERRIN CORDINGLY; CENTURYLINK PUBLIC COMMUNICATIONS INC.; TAUNYA TAYLOR; GREG NORMAN; GREEN RIVER POLICE DEPT.; AMANDA CHETTERBOCK, DONALD THATCHER AND DOES 1 -10. | : : : : : : |  |
| CROSS DEFENDANTS | : |  |

---

COMES NOW HOLLIE LUNDAHL TELFORD AND MARTI LUNDAHL and file this Cross Complaint and Counterclaim against the Defendants upon the following allegations:

### SUBJECT MATTER JURISDICTION

1. This Court has subject matter jurisdiction over the within claims under the (1) Fair Housing Act, "FHAA" 42 U.S. Code § 3601, et seq.; 24 C.P.R. § 100.202(b); (2) The American with Disabilities Act, "ADA" 42 U.S.C. §§ 12101 et seq., (3) Section 203(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-2(c) (1964 ed.), 24 C.P.R. § I 00.400(b), 42 U.S.C. § 3612(g)(3) and prohibiting punishment and retaliation under any civil rights statute; (4) Civil Rights Act, section 1983 and 1985 for equal protection rights of a interracial household; (5) Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) et seq. for title III



12 Summons Issued

discrimination by telecommunication entities receiving federal funds under their respective cell phone and broadband lifeline programs;  (6) Declaratory Judgment Act to decree void any rule that constituted a discriminatory practice as provided by 42 U.S.C. § 3615 ["any law of a State . . . that purports to require or permit any action that would be a discriminatory  practice under this subchapter **shall to that extent be invalid"**];  (7) the    Fair Debt Collection Practices Act, 15 USC 1692e, et seq.;  AND state law violations under 28 USC § 1367 for defamation, false imprisonment and arrest,  intentional interference with contract  and abuse of process.

## PERSONAL  AND  VENUE  JURISDICTION  ALLEGATIONS

2.    Plaintiffs are residents of Sweetwater County Wyoming.

3.    Defendant GLOBEL E. LLC d/b/a PIONEER PARK is incorporated in the state of Colorado and does business in Sweetwater County Wyoming as PIONEER PARK Mobile Home  Community.    See exhibit "1" attached.    Defendant CENTURYLINK PUBLIC COMMUNICATIONS INC.  is incorporated in the state of Louisiana and is the sole provider of dsl communication services in Sweetwater County, Wyoming.   See exhibit "2" attached. Defendant  GREG NORMAN  is Centurylink's Wyoming corporate representative working with the Wyoming Utilities Commission for  any  complaints  made  with  that  Department  and reportedly resides in Cheyenne Wyoming.     Defendants  MICHEAL  STULKEN,  ANN CLAYTON  and JUDY CIRILLO are  agents and employees of Defendant GLOBEL E. LLC d/b/a PIONEER PARK and whom aided, abetted and assisted in the violations of their employer GLOBEL E. LLC;  they reside in Green River Wyoming.   Defendant  VERIZON COMMUNICATIONS INC is incorporated in the state of Minnesota and does cell phone service in the state of Wyoming. See exhibit "3" attached. Defendant ERRIN CORDINGLY is a management employee for VERIZON and resides in the state of Utah. Defendant TANYA TAYLOR  aided and abetted that FHAA and ADA violations by GLOBAL / PIONEER sufficient to prevent Cross Plaintiffs from obtaining insurance on their rental premises and personal properties. Defendant  GREEN RIVER POLICE DEPT. is a municipal agency conspiring with all other defendants to remove Plaintiffs from their present dwelling  without privilege. Defendant CHETTERBOCK is a clerk of the circuit court who aided all defendants illegal acts. Defendant DONALD THATCHER is the post master for the Green River Post office.

4.    VENUE is proper in this court as the loci where  Cross Plaintiffs dwell.

## GENERAL FACT ALLEGATIONS

2

5.     Cross Plaintiffs  are protected  disabled persons under the Fair Housing Act and the American Disability Act.  See  Title 42 U.S.C. § 12112(a),   42 U.S. Code § 3604(d). and Cleveland v. Policy Management Systems Com., 526 U.S. 795,797 (1999)(Held:  any person qualified as  disabled under the SSA  is a protected disabled person under the FHAA, AFA and Section 504 of the Rehabilitation act.).    Cross Plaintiff Hollie Telford has a  diagnosis of Diastolic Congestive Heart Failure with malignant hypertension as concluded by the SSA's own cardiologist and has survived on SSI payments for a number of years.   See exhibit "4" attached for this cardiology report.   The other  Cross Plaintiff,  Marti  Lundahl , suffers from stage IIIB-IV invasive carcinoma, MDS and 4 brain anuerysms in the anterior communicating artery secondary to her metastatic cancer.   Attached hereto as exhibit "5" is a small example of Marti's treatment schedule at the Huntsman Cancer Ctr. commencing January of 2014, the diagnostic report of Marti's brain aneurysms on June 9,  2015 at  Memorial Hospital in  Rock Springs,   and  the brain surgery report for Marti on June 10, 2015 at the U of U in Salt Lake City Utah to coil Marti's  brain aneurysms.

6.     Cross Plaintiffs  had  been  waiting on a section 8 housing list for 3 years before their vouchers were granted in 2013 by advancing Cross Plaintiffs  to the top of the list due to the serious nature of their disabilities and via enhancing regulations by the SSA requiring expedited placement for persons suffering from serious disabilities.

7.     In  May of  2014,   Cross Plaintiff's  section 8  housing voucher was ported to Rock Springs Housing Authority so that  Cross Plaintiff Marti could receive day to day care at the Rock Springs Memorial Cancer Hospital and Cross Plaintiff Holli could consult locally with a cardiologist. Once transferred,  the Rock Springs Housing Authority gave  Cross Plaintiffs so many days  to find  a  private landlord  in either Rock Springs or Green River Wyoming that would accommodate   Cross Plaintiff's  section 8  voucher requiring  a  4  bdrm  unit  to accommodate Hollie,   Marti,  Marti's child and grandchild, the latter who were and are of Pacific Islander descent.   Cross Plaintiffs located  such a landlord who owned a mobile home unit situated in the Defendant GLOBAL's  aka PIONEER's   Mobile Home Park in Green River, WY.   This private landlord entered into a lease with  Cross Plaintiffs  and into a HAP contract with the Rock Spring Housing Authority in June of 2014,    AFTER  the housing authority approved the mobile home unit (which Cross Plaintiff's presently lived in)   for participation in the section 8 program.

8.    In the interim,  Cross Plaintiff Marti was still undergoing extensive radiation treatment  at the Huntsman Cancer Center in the latter part of May and early part of June 2014.  During Marti's treatment,  Cross Plaintiff Holli Telford  on June 1, 2014 visited the VERIZON store to open a cell phone account in her name under the federally assisted  "life line" program – to make available to  Cross Plaintiffs an emergency phone device for calls to 911 and other medical providers as noticed by the Dept. of Justice and the statutory provisions cited in exhibit "6" attached.  Attached hereto as exhibit "7" was VERIZON's online add identifying the parameters of Verizon's  "life line"  program and admitting that it was federally funded.  Attached hereto as exhibit "8" is Verizon's online add indicating that the base line access rate for all smart cell phones will be $20 per month. Attached  hereto as exhibit "9" is Verizon's add indicating that Verizon offers a minimum discount of  $9.25 per month on phone service under the Life Line program.  Accordingly,  the maximum that VERIZON   could charge monthly to a Life-line recipient was $10.75 per month.    Hollie's service was scheduled to commence June 2, 2014.  Hollie  did not sign any contract with Verizon.

9.    Hollie's devices did not work. Accordingly,  two days later on June 4, 2014, Hollie returned her devices/cell phone to the VERIZON store pursuant to the add found at exhibit "10" attached.  Defendant CORDINGLY, a manager  earning commissions on all active accounts,  refused to take the devices back.  HOLLIE remained in the store until CORDINGLY would give HOLLIE a receipt for the returned devices.  CORDINGLY called the police, an officer Blair Bench, badge no. 112 for Salt Lake County Utah,  and had HOLLIE arrested for criminal trespass for refusing to leave the Verizon store until HOLLIE, a disabled person,  received a receipt for the returned Verizon devices.  Officer Bench did seize and detain Hollie at the police station for a period of 2 hours until he issued a citation against HOLLI for criminal trespass.  Three months later the Salt Lake Prosecutor discharged the citation based on Hollie's "privileged  conduct".

10.    Cross Plaintiffs  returned to  their  mobile home  dwelling in  Green River Wyoming in mid June of 2014.    Cross Plaintiffs shortly thereafter learned that the Mobile Home Park in which Plaintiffs   household resided,    was a competitor in the market for receiving section 8 subsidies from the Rock Springs Housing Authority.   Section 8 funding is limited to a certain funding amount in Rock Springs, WY.   GLOBAL /PIONEER  **wanted that funding amount reserved to them.**  Shortly AFTER  Cross Plaintiffs' section 8 subsidy had

4

been put in place and knowing that Cross Plaintiffs were a  disabled and race protected household needing to exercise their  tenancy rights to the mobile home lot,  Defendant GLOBAL /PIONEER  demanded that  Cross Plaintiffs sign a lot lease contract which waived their  rights to sublease the mobile home lot upon which Cross Plaintiff's  approved rented section 8 unit was situated;  with the intended purpose of  nullifying  Cross Plaintiff's ability to participate in the section 8 voucher program and to usurp the funds slated to  Cross Plaintiff's landlord  under the HAP contract  for use by GLOBAL / PIONEER regarding  wholly owned mobile home units and prospective section 8 tenants on GLOBAL / PIONEER's waiting list. (GLOBAL /PIONEER  self owned 20 units in the park according to testimony provided in the eviction action.   The rest of the 350 mobile home units were privately owned and the private owners paid a lot lease fee equal to what Cross Plaintiffs were paying.).

9 .    Cross Plaintiffs   refused to sign the illegal lot lease contract with GLOBAL /PIONEER  and in turn demanded that GLOBAL /PIONEER  grant  Cross Plaintiffs  an accommodation in the terms of their lot lease contract which permitted  Cross Plaintiffs as a disabled and race protected household needing to continue their operative  voucher at the already  approved and occupied mobile home unit,   to sublease the mobile home lot  to Cross Plaintiffs at no financial detriment to  GLOBAL /PIONEER  as compared to the lot lease fees being paid by other private mobile home owners in the Park.  AFTER  Cross Plaintiffs refused to sign the illegal lot lease,  GLOBAL /PIONEER   tried to induce  Marti's race protected  teenage child to sign the lot lease in order to execute a written waiver that GLOBAL /PIONEER could enforce.   Being frustrated in their efforts to secure our voluntary removal, GLOBAL /PIONEER  then phoned the Rock Springs Housing authority and instructed same that Cross Plaintiff's   right to sublease  GLOBAL /PIONEER's  mobile home lot must be granted by GLOBAL /PIONEER  in writing,   that  GLOBAL /PIONEER  did not consent to such a contract with  Cross Plaintiffs,   that   Cross Plaintiffs and their household  were criminally trespassing onto GLOBAL /PIONEER's real property, and  in support thereof, GLOBAL /PIONEER  provided the Housing Authority a copy of a criminal trespass notice that GLOBAL /PIONEER had taped to  Cross Plaintiff's  mobile home unit door. See exhibit "11" attached hereto for this notice.   GLOBAL /PIONEER  instructed the Housing Authority to terminate Cross Plaintiff's   HAP  contract and section 8   vouchers  based  on  GLOBAL /PIONEER's unwillingness to grant a sublease accommodation.

10.    The Housing Authority based on these admitted contacts with  GLOBAL /
PIONEER,   did terminate  Cross Plaintiff's  section 8 vouchers and the HAP  contract with
the private owner of the mobile home dwelling unit.    See exhibit "12" attached for  this
termination letter.

11.    After GLOBAL / PIONEER attached the criminal trespass notice to Cross
Plaintiffs door,  the Green River Police Department began a harassment scheme against
Cross Plaintiffs to  forciably remove Cross Plaintiffs and their household from Cross Plaintiff's
protected mobile home dwelling. GREEN RIVER POLICE  repeatedly visited  Cross Plaintiffs
home under color of authority to arrest   the occupants therein on behalf of the "PARK"
defendants.    On these confrontations,  HOLLIE threatened counter suit against GREEN
RIVER POLICE DEPT. for attempting to exercise seizure authority under color of law without
a court order.    Being frustrated in their attempts to execute a non-judicial eviction, the PARK
defendants and GREEN RIVER POLICE DEPT, then conspired with the local Post master  to
effect in particular HOLLIE's arrest on trespass and disturbing the peace crimes.  Specifically,
HOLLIE started receiving threats in her post office box by Defendant THATCHER  for non-
existent post box crimes.  THATCHER  also  started returning HOLLIE's legal mail to the
various sendees to obstruct delivery thereof.    HOLLIE  began filming her appearances at the
Green River Post Office and the activities of obstruction by THATCHER.  On at least two
occasions when HOLLIE had her video camera in hand,  THATCHER directed the Green
River Police Dept. to the post office to arrest  HOLLIE for criminal trespass and disturbing the
peace.  HOLLIE's appearances were not only on her videotape,  but also on a surveillance
videotape in the lobby of the post office.  THATCHER directed the POLICE to order that
HOLLIE not be allowed to visit the Green River Post Office or HOLLIE would be arrested in
the future.  HOLLIE nevertheless continued to appear at the post office with her videocamera
in hand.  In November of 2014, immediately after an appearance by HOLLIE to dispatch mail,
THATCHER executed a citizens arrest warrant against HOLLIE for criminal trespass and
disturbing the peace. Green River Police  Sergeant Mark McDonald came to Cross Plaintiffs
dwelling to arrest HOLLIE based on the citizen's arrest warrant issued by THATCHER.
Sergeant  McDonald came into Cross Plaintiff's  dwelling to exercise this citizen's arrest
warrant by THATCHER.  When HOLLIE showed Sergeant McDonald her videotapes of her
appearances at the post office earlier that day and which revealed no criminal conduct by

HOLLIE and thereby defeated any probable cause support   to THATCHER's criminal complaints, Sargeant McDonald  left Cross Plaintiff's dwelling issuing an edict that if HOLLIE ever visited the Green River Post Office again,  she would be arrested on the spot.  This "official appearance" and proclamation   was filmed by HOLLIE.   The next day HOLLIE appeared at the Green River Police Dept. to execute a criminal complaint for false report by THATCHER.  HOLLIE demanded Sargeant McDonald turn over the citizens arrest warrant executed by THATCHER.   Sargeant McDonald refused to turn over this document to HOLLIE because Sargeant McDonald never effected the seizure of HOLLIE's person.  Again Sargeant McDonald threataned HOLLIE that if she ever appeared at the Green River Post Office, HOLLIE would be arrested for fabricated crimes.  HOLLIE again filmed this threat.    The GREEN RIVER POLICE DEPT.  (who acted under the policy decisions   of Sargeant McDonald)  and THATCHER denied HOLLIE access to public accommodations without just cause and repeatedly fabricated false criminal reports against HOLLIE to deny HOLLIE her rights to participate in  services of public accommodations in violation of the ADA and section 504 of the RA.    This  collective  conduct caused Cross Plaintiffs to file  an injunction petition in the Circuit Court barring the police and the post office from executing any bogus and false criminal trespass or disturbing the peace claims.   The Circuit court would deny jurisdiction to issue injunctions irrespective that the Circuit Court had  primary subject matter jurisdiction over  Forciable Entry and Detainer actions and misdemeanor charges of criminal trespass and disturbing the peace.    At all times herein,   GREEN RIVER POLICE DEPT and THATCHER knew that HOLLIE was a disabled person protected under the FHAA, the ADA and section 504 of the RA and that their malicious actions could cause HOLLIE to suffer a stroke given  HOLLIE's publicly  recorded disability.   These defendants intentionally engaged in the tortious and discriminatory conduct  to deny HOLLIE reasonable accommodations to housing  and postal  services.

12.    GLOBAL / PIONEER   continued to procure Cross Plaintiffs removal from the mobile home unit that  GLOBAL / PIONEER  did not own,  either voluntarily or involuntarily. Under Wyoming law,  if Cross Plaintiffs  had voluntarily vacated  the mobile home,  GLOBAL / PIONEER  would have been able to declare the mobile home abandoned and seized  Cross Plaintiffs personal properties contained therein after a period of 120 days.  See Wyo. 34-24-118.    Moreover,    the Housing authority terminating the HAP contract with the owner of the

mobile home unit, did not terminate Cross Plaintiff's 2 year lease contract with that owner; thus Cross Plaintiffs would have been liable for any breach in the 2 year lease contract and other service contract breaches if they had vacated the unit. Accordingly Cross Plaintiffs stayed in the Unit and continued to pay rents and service fees even after the termination letter by the Housing Authority. To further secure Cross Plaintiffs "voluntary removal" from the subject residence, GLOBAL / PIONEER conspired with the utility providers, Centurylink communications and Verizon Wireless, to obstruct Cross Plaintiff's services attaching to the rented residence – by charging Cross Plaintiff's excessive service fees prohibited under federal law, by intermittently terminating these utility services as an extortion tool, and by reporting Cross Plaintiffs to various credit reporting companies for false debts.

Specifically, VERIZON sent HOLLIE a bill in the amount of $303.22 in July of 2014 on an account that was canceled by operation of Wyoming law when HOLLIE returned her devices two days after she opened the VERIZON account reportedly under the LIFE LINE program. See exhibit "13" attached for this bill. VERIZON then fraudulently reported this debt to the CRA. See exhibit "14" attached for parts of HOLLIE's September 2014 credit report reflecting this false debt. In August of 2014, HOLLIE sought a medical loan to pay Marti's transportation and lodging costs presently being applied to her credit card at the interest rate amount of 16% per annum. PenFed offering the best interest rates, turned HOLLIE down due to the recent report by Verizon Wireless. See exhibit "15" attached for the denial letter. Consequently HOLLIE obtained a car loan through her credit union (carrying her credit card charges) at a significantly higher rate than offered other borrowers, to wit: 10% per annum over a three year period. The unfavorable interest rate was due to VERIZON's false reporting.

14.   Cross Plaintiffs continued to remain on the mobile home lot by HOLLIE taking out another loan against a tractor mutually owned by HOLLIE and a farmer in Utah in the amount of $15,000.00 and using those loan funds to pay the rental contract with the owner of the mobile home unit. See February 2015 bank statement reflecting HOLLIE's loan balances on two loans as exhibit "16" attached hereto. In the interim, GLOBAL / PIONEER continued to rent the mobile home lot to Cross Plaintiffs for the same rent fee charged other park residents for their rented mobile home lots.

15.   At the outset of residing in the mobile home park in June of 2014, HOLLIE

8

contacted Centurylink to provide broadband / VOIP services to the protected dwelling (as the only dsl provider in the area.).   CENTURYLINK refused to provide HOLLIE, a disabled person, with the broadband Life Line service bearing monthly fees of $9.25 and would only open an account for HOLLIE if HOLLIE paid the normal fees as paid by other non-disabled and medium to high income households, in violation of section 504 of the Rehabilitation Act. See exhibit "17" attached for Centurylink's advertisement promising federally assisted fees of $9.25 per month.   Because it was mandatory for HOLLIE's household to obtain a broadband service as a means of communicating with various emergency and specialty medical providers, HOLLIE secured a broad band internet account at the normal rate paid by non-disabled consumers and funded the difference via the second $15,000 loan referenced in exhibit "16" attached hereto.   Centurylink then commenced overcharging HOLLIE fees on a "regular customer" account.   HOLLI complained numerous times over the phone to Centurylink's billing department without resolve.   Instead Centurylink would repeatedly close HOLLIE's broadband account while reporting false debts on Hollie's credit report.   HOLLI finally took the matter to the small claims court in December of 2014 seeking injunctive and legal relief.

16.   At the time of trial, the small claims court denied jurisdiction over HOLLIE's section 504 claim under the Rehabilitation Act both because the punitive damages would exceed the jurisdiction of the small claims court and because the small claims court denied subject matter jurisdiction to issue injunctions which would direct Centurylink to impose the Life Line service fees and to remove any derogatory credit against HOLLIE's credit report. Upon Centurylink's insistence, the court decided the case as an unjust enrichment case and awarded HOLLIE overpayment fees of $18.59 (on non-disability monthly contract rates of $31.98) to the date of February 1, 2015.   See exhibit "18" attached for this judgment. Because the Small Claims Court denied jurisdiction to order CenturyLink to provide HOLLIE Life Line service fees or to remove the derogatory credits listed on HOLLIE's credit report, CENTURYLINK continued to discriminate against HOLLIE in violation of section 504 of the Rehabilitation Act and the retaliatory provisions of the ADA.

17.   When CENTURYLINK consistently refused to grant HOLLIE Life Line service fees, after securing a zero balance on her account by June 1, 2015, HOLLI terminated the CENTURYLINK account.   CENTURYLINK subsequently returned HOLLE's deposit on the

closed account  as requested by HOLLIE.

18.    On June 2, 2015,  MARTI filed a request to open a LIFE LINE  account with CENTURYLINK.    Like   HOLLIE,   CENTURYLINK   refused to grant MARTI a federally assisted LIFE LINE account.  Into the third month,  MARTI filed a complaint with the Wyoming Utility Commission who ultimately referred MARTI's complaints to GREG NORMAN,  the CenturyLink Customer Advocate in Cheyenne Wyoming.  NORMAN  attempted to, but did not correct,   CENTURYLINK's continual over billing practices which included a  refusal to exercise the autopay provision on the account  (but only for an authorized LIFE LINE amount.).   Nor did NORMAN resolve   CENTURYLINK's discriminatory practice of not providing federally assisted LIFE LINE service fees to MARTI, a protected class member. Repeated emails were  made between MARTI, NORMAN and the Wyoming Utilities commission over a period of 7 months complaining about CENTURYLINK's illegal discriminatory practices.  In the last communication in December of 2015,  MARTI informed NORMAN that she was suing  CENTURYLINK for discrimination practices under the FHAA, ADA and section 504 of the RA.

19.    In  the meantime, in March of 2015,  AFTER negotiating Cross Plaintiffs mobile home lot sublease payments for a period of 9 months,  GLOBAL / PIONEER  filed an  eviction  petition  against  Cross Plaintiffs on the only recognized basis by the state court, i.e. that Cross Plaintiffs were tenants at sufferance on  GLOBAL / PIONEER's  mobile home lot because GLOBAL  / PIONEER refused to execute a written lot lease contract which included a  sublease  accommodation – as opposed to a written lot lease contract which waived this federal right.    Attached hereto as exhibit "19" are the accepted grounds of GLOBAL / PIONEER's eviction complaint (the denied portions by the eviction court have been crossed out and can be confirmed by audio recording in the pre-trial hearings.).

20.    GLOBAL / PIONEER  brought the eviction action  in retaliatory conspiracy with the other Defendants to obtain  a judgment of possession / restitution of their mobile  home lot and thereby truncate and cut off  Cross Plaintiffs  rights under the FHAA, the ADA and section 504 of the RA  – through a state judicial eviction decision that prima facially violated    42 U.S.C. § 3615 ["any law of a State . . . that purports to require or permit any action that would be a  discriminatory  housing  practice under this  subchapter **shall to that extent be**

**invalid"**].)   During this time,  Defendant TAUNYA TAYLOR  aided and abetted  GLOBAL /
PIONEER's  continued violations of the FHAA, ADA , section 504 of the RA,  when she as a
bank officer  supported  GLOBAL  / PIONEER's  color of title challenge  and refused to
sustain  insurance coverage to the dwelling and personal properties;  thereby placing Cross
Plaintiffs at risk for  losses sustained by way of  any illegal restitution judgment obtained by
GLOBAL  / PIONEER and successfully executed.    TAYLOR's actions of terminating Cross
Plaintiff's insurance coverage based on the discriminatory housing practices of   GLOBAL /
PIONEER,  subjected TAYLOR  and  GLOBAL  / PIONEER  to liability for any losses listed as
perils in the now canceled policy.

      21.    Eviction proceedings in  Wyoming  are  done on a summary basis and do not
allow  the filing of counterclaims,   cross complaints or affirmative defenses.   These legal
conclusions were made by the sitting eviction court  during pre-trial proceedings, and  further,
fashioned that court's approval of jury instructions.   Attached hereto as exhibit "20" are the
relevant parts of the Circuit court's pre-trial orders and accepted jury instructions.  Quoting
relevant parts herein:

> It is important to note that for the jury to be instructed on a legal theory, it "must be
> recognized by statute or case law of Wyoming." Therefore, "instructions which do
> not contain a proper statement of the law are properly refused." *Chavez-Becerra* v.
> *State,* 924 P.2d 63, 67 (Wyo. 1996) *(citing Deleon* v. *Stale,* 896 P.2d 764. 768
> (Wyo. 1999))*. An instruction which does not present  a legally cognizable defense
> is properly *refused. Id. (citing Bouwkamp,* 833 P.2d  at 491; *Phillips v. State.* 760
> P.2d 388, 390 (Wyo. 1988)).

> As noted in the Court's order granting a limited continuance, eviction is a summary
> procedure intended to give landowners a summary remedy to regain possession
> of their property. *Diamond B Servs., Inc. v. Rohde,* 2005 WY 130,122,120 P.3d
> 1031, 1040 (Wyo. 2005). . This is a civil remedy provided by statute and intended
> to affect only the question of the present right to possess real property. The
> purpose of the forcible entry and detainer statutes is to provide a summary,
> extraordinary, and speedy method for the recovery of possession of real estate in
> the cases especially enumerated by statute. Wyo. Stat. Ann. § 1-21-1002(a)(v).

> The Court concludes that the Defendants' position that the Plaintiff's written
> contract (Defendants refused to sign)  is impractical, unconscionable, or otherwise
> illegal **is not legally cognizable in this case. Accordingly, the jury will not be
> instructed on those issues.**

> . . .There are two threshold problems with instructing the jury on retaliatory
> eviction  as an affirmative  defense.

>    First,  **it  is  not  within  the province of this Court to recognize new**

**claims or defenses foreign to Wyoming law.** Under our common law system of orderly justice, that function is reserved for the Supreme Court. . . **The defense must be recognized by statute or case law of Wyoming.** Thus, instructions which do not contain a proper statement of the law are properly refused.

Wyo. Stat. Ann. § 1-21-1009 (Lexis Nexis 2013). . . **does not contain prescribed findings that relate to affirmative defenses.**

Wyoming statutes do create one retaliatory eviction defense under The Wyoming Safe Homes Act, Wyo. Stat. Ann. §§ 1-21-1301 through 1-21-1304, pertinently provides:

> (a) In any action brought by a landlord against a tenant to re cover rent for breach of lease, if by a preponderance of the evidence, the court finds that: [the tenant or a household member was under a credible imminent threat of domestic abuse or sexual violence, and gave notice). . .

Wyoming's forcible entry and detainer statutes are clear and unambiguous. They do not provide a retaliatory eviction affirmative defense except under the Wyoming Safe Homes Act. **. . . The Court concludes that the Defendants' retaliatory eviction defense is not legally cognizable in Wyoming. Accordingly, the jury will not be instructed on those issues.**

Ms. Telford also makes an argument the nub of which seems to be that it is unfair for the forcible entry and detainer statutes, Wyo. SlaL Ann. §§ 1-21-1001 through 1-21-1016, to apply to mobile home lots because of the logistical difficulty and expense involved with moving a mobile home if a writ of restitution is issued. **Wyoming's forcible entry and detainer statutes do not make special provisions for mobile home lots.** Some states do. *Cf.* Ohio Rev. Code Ann. § 1923.12 (West 2015). The Court expresses no view on whether Wyoming statutes are "fair." That is not within the province of this Court. The legislature, not the Court, makes the law.

22. During the underlying eviction action, because of the trial court's pre-trial rulings, only Plaintiff was allowed to submit jury instructions to the jury. These instructions are included in exhibit "20" attached and provided as follows:

Instruction No. **14**

In this action, the Plaintiff has the burden of proving, by a preponderance of the evidence, the following:

The Defendants are settlers or occupiers of the land located at 935 Wilderness Trail, Green River. Wyoming, without color of title, to which the Plaintiff has the right of possession.

Instruction No. 15

12

"Settler or occupier of lands or tenements;  without color of title, to which the plaintiff has the right of possession" is a definition in the statutes of the State of Wyoming which identifies a legal category  of people that may be evicted. This .legal category  includes a  "tenant at sufferance."

> "Tenant at sufferance" means someone who originally had the legal right to occupy' or possess property,  but continues to occupy or possess property after his or her legal right to do so has ended."

> "Tenancy" means a legal right to occupy or possess property created by a contract.  A contract that creates a tenancy is sometimes called an agreement, a lease, lease, agreement, or:a rental agreement. ,

23.   A jury  trial  was  conducted on the restricted jury instructions submitted by the trial judge.    During the jury trial,  Cross Plaintiff HOLLIE attempted to show accommodation and  retaliation  violations by   GLOBAL   /  PIONEER  when  she  examined   GLOBAL /  PIONEER's manager Defendant CLAYTON on the  stand  about instructions  given by this witness to the Rock Springs Housing Authority to terminate Cross Plaintiffs section 8 vouchers and HAP contract  on July , 2014 based on the refusal  by  GLOBAL  / PIONEER to grant a requested sublease accommodation to the mobile home lot  upon which Cross Plaintiff's section 8 approved dwelling was located.    Defendant CLAYTON  committed perjury on the stand by testifying that she had never made any such contact with Rock Springs Housing authority on July 3, 2014 to obstruct Cross Plaintiff's section 8 vouchers or HAP contract. When  Cross  Plaintiff HOLLIE presented  faxed communications to the court from CLAYTON to the ROCK SPRINGS housing authority on the date in question,  as well as a videotape of the administrative hearing with the Rock Spring Housing Authority principals testifying under oath that CLAYTON's contacts with that office on behalf of her employer  GLOBAL   / PIONEER caused that agency to terminate Cross Plaintiff's section 8 vouchers and HAP contract for the reasons  identified in the termination letter attached hereto as exhibit "12", CLAYTON continued to perjuriously  testify that the fax number on the communications from GLOBAL  / PIONEER's Park office  did not belong to PONEER PARK.   HOLLIE asked that the  jury  trial  be  continued  until  such  time that CENTURYLINK could verify  or impeach CLAYTON's  perjury.  The trial court denied a continuance and informed HOLLIE that she could take the matter up in post trial proceedings.    The trial court also denied admission of HOLLIE's claimed perjury  evidence to the jury because the court had previously ruled that Wyoming did not recognize a retaliatory eviction defense  and therefore HOLLIE's evidence

was irrelevant to GLOBAL  / PIONEER's  eviction claim for tenants at sufferance.    As a consequence,  the Jury returned a restitution judgment in  GLOBAL / PIONEER's favor.  The trial judge took the verdict  under submission.

24.    In the interim,  immediately after the trial terminated,  HOLLIE obtained an SDT from the clerk of the court directed to CENTURYLINK to verify the owner of the fax number on the  transmissions  made  on  July 3,  2014  to  the  Rock  Springs  Housing  Authority. CENTURYLINK obstructed personal service of  the SDT by the Sweetwater County sheriff's office upon CENTURYLINK's  i Area Manager Justin Wilkins  located  in Rock Springs  and authorized  certified  mail  service  on  it's  agent  of  service  CT  Corporation  in  Cheyenne Wyoming.  Ultimately,  CENTURYLINK deliberately contempted the SDT;  to join GLOBAL / PIONEER's efforts to succeed on a retaliatory eviction in violation of Cross Plaintiff's FHAA, ADA and RA section 504  rights.   The record shows that  HOLLIE repeatedly requested that the trial court conduct a hearing on CENTURYLINK's civil and criminal contempt, ultimately  to no avail.

25.    On March 25, 2015,   the Circuit Judge entered a Writ of Restitution in favor of the  Plaintiff  because  the  Plaintiff    refused  to  execute  a  written  contract  allowing  Cross Plaintiffs to sublease the mobile home lot in violation of the FHAA, the ADA and section 504 of the RA.     See exhibit "21" attached hereto for this judgment.

26.    Cross Plaintiffs filed a post trial motion objecting to the general nature of the jury verdict.    The trial judge finally responded to HOLLIE's post trial motion, denying same. The judge concluded that the general nature of the jury verdict form simply translated to whether plaintiff won or lost on the only issue before the jury,  to wit: whether Cross Plaintiffs were tenants at sufferance..  See relevant portions of post trial ruling at exhibit "23" attached. Cross Plaintiffs timely appealed and later amended their Notice of Appeal within days of the Judge's post trial ruling.   The Circuit clerk CHETTEBOCK  never transferred  Cross Plaintiff's Amended Notice of Appeal to Judge Nena James,  the latter who was statutorily disqualified from sitting as an appellate court given she was disposing of the same constitutional issue Judge James decided at  a trial court level. [1]

_____

1. Specifically,  Cross Plaintiffs brought a declaratory judgment action in the District

27.    Three months later, the trial court finally ruled on HOLLIE's motion for a contempt hearing against CENTURYLINK.   The Circuit judge admitted that CLAYTON appeared to have committed perjury during the jury trial but that CENTURYLINK's separate subpoena contempt was not an independent matter and hence rendered MOOT when the court denied HOLLIE's request for a new trial.  See exhibit "24" attached for this order.   Cross Plaintiffs separately appealed this judgment as a violation of contempt law in Wyoming.

28.    When the Circuit clerk CHETTERBACK obstructed Cross Plaintiff's appeal by failing to transfer Cross Plaintiff's Amended notice of appeal to the district court sitting as the appellate court,   and after Cross Plaintiffs filed a writ motion before the appellate Judge Nena James  to direct the clerk of the circuit court to transfer the Amended Notice of Appeal (a motion which was completely ignored by Judge James),  Judge James dismissed Cross Plaintiff's appeal based on typographical errors committed in Cross Plaintiff's original notice of appeal.    Cross Plaintiffs then subpoenaed the clerk of the circuit court CHETTERBOCK to respond as to why this official had not transferred the amended notice of appeal to the District Court and directing this officer to produce her docket record of the circuit court proceedings which this clerk maintained was privileged.     District Judge James immediately quashed the SDT.   See exhibit "25" attached for this quash order.

29.    In the interim, shortly after the circuit judge denied Cross Plaintiff's motion for a contempt hearing against CENTURYLINK as identified in exhibit "24" attached, in retaliation for Cross Plaintiffs seeking contempt sanctions against CENTURYLINK, CENTURYLINK fabricated a false internet bill against HOLLIE on an account that had been closed at the end of May of 2015 and also reported HOLLIE to collections on the bill in

---

court to determined that GLOBAL / PIONEER's attempted eviction actions were illegal. Judge Nena James determined that Cross Plaintiffs had no standing to bring a declaratory judgment action given Cross Paintiffs were not the owner of the mobile home unit in question. It was then that District Judge Nena James made the advisory ruling that Cross Plaintiffs were tenants at sufferance; thus causing GLOBAL / PIONEER to bring an eviction action against Cross Plaintiffs in the Circuit court based on this sole legal ground one month after Judge Nena James ruling in the Declaratory Judgment Action.   Judge James hence should have recused on appeal because she was determining the constitutionality of her own void advisory "tenants at sufferance" ruling.   Accordingly, when Judge James refused to disqualify, Judge James violated Cross Plaintiff's 14th amendment rights.  Nevertheless, Cross Plaintiffs paid for appeal was merely a pretext for the appearance of procedural and subtantive due process.

violation of the FRCA.   See exhibit "26" attached for this false bill.   HOLLIE called CENTURYLINK numerous times demanding that CENTURYLINK discharge the false debt and remove the derogatory credit from HOLLIE's credit report.   When CENTURYLINK failed to do so,  Cross Plaintiffs filed suit against CENTURYLINK,  GLOBAL / PIONEER and Judge James  in the federal court as USDC-WY case no. 2015-CV-186.   Federal Judge Skavdahl usurped jurisdiction over that federal action pursuant to ex parte communications with Judge James and dismissed that federal action without prejudice the next day based on a pre-filing order entered against Cross Plaintiff HOLLIE in 2014.  HOLLI and MARTI have filed an attack on that pre-filing order in this instant action  because GLOBAL / PIONEER introduced that pre-filing order into the underlying removed state cases as a basis for asserting Cross Plaintiffs retaliatory eviction defense as frivolous.

30.     Shortly after Judge  James dismissed Cross Plaintiffs  appeal of the eviction action by construing the MOOTED Notice of Appeal rather than  Cross Plaintiff's Amended Notice of Appeal and  placing form over substance in that construction,  GLOBAL / PIONEER filed a motion to lift the stay order on the  Restitution Judgment and to execute same.  See exhibit "27" attached for this motion.    Cross Plaintiffs opposed the motion to lift the stay order,  against reiterating   GLOBAL / PIONEER's ongoing violation of the FHA and ADA. See Cross Plaintiff's Opposition  as exhibit "28" attached.

31.     On February 4, 2016,  Cross Plaintiff filed a notice of removal of all state proceedings relevant to the eviction proceedings.  On February 8, 2016, Cross Plaintiff filed an amended Notice of Removal based on the Diversity statute  AND   the civil rights removal statute 28 USC section 1443 because  Wyoming state law was legislatively mandated to violate Cross Plaintiffs   rights under the Fair Housing Act,   the American Disability Act, Section 504 of the Rehabilitation Act and the Civil Rights statute prohibiting race and other discrimination.   See *Georgia v. Rachel, 384 U.S. 780 (1966) (where  **federal law confers immunity from state prosecution by it's terms**,  . . . the state action is subject to removal under section 1443.).*   See  too 42 U.S.C. § 3615 [expressly commanding that "any law of a State . . . that purports to require or permit any action that would be a discriminatory  practice under this subchapter **shall to that extent be invalid"**].)

32.     Because Cross Plaintiffs were barred from filing any affirmative defense, Cross

Complaint or Counterclaim in the state court  eviction action by statutory construction (refer back to paragraphs 22-24 supra),   Cross Plaintiffs do so now.

### FIRST CAUSE OF ACTION
(Violation of Title III of the ADA and 28 CFR Part 36 –Nondiscrimination on the Basis of Disability in Public Accommodations and Commercial Facilities Against all Defendants)

33.    Title III of the ADA proscribes discrimination against the disabled in public accommodations. Id. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns . . . or operates a place of public accommodation.").

34.    A place of lodging is construed as a public accommodation under **42 U.S. Code § 12181(7)(a).** See also 42 CFR Sec. 36.207 which provides that places of public accommodation are located in private residences if  (a) . . . used both for the place of public accommodation and for residential purposes.    A person uses a residence  for public accommodation when they conduct any business on the premises that effects,  however de minimus, commerce. RODRIGUEZ V. VERIZON TELECOM, 13-cv-6969 (PKC)(DCF) (S.D.N.Y. Dec 02, 2014)( plaintiff has sufficiently pleaded that he is disabled within the meaning of the ADA, pursuant to 42 U.S.C. § 12102(1)(C), and that he conducts business in his home with respect administering his disability. "[T]he pleading requirements in discrimination cases are very lenient, even de minimis. "Peterec-Tolino v. Commercial Elec. Contractors, Inc., 08-cv-0891,  2009 WL 2591527, at *2 (S.D.N.Y. Aug. 19, 2009) (quoting Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003)).    See also Carparts Distrib. Ctr. v. Auto. Wholesaler's Assoc., 37 F.3d 12, 20 (1stCir. 1994)(where disabled person conducts a business activity online from their residence, the residence is construed as a place of public accommodation.); Fisher v. Oklahoma Health Care Auth., 335 F.3d 1175 (10th Cir. 2003) (funding more prescription drugs in Medicaid-covered nursing homes as opposed to  homes receiving  Medicaid and community-based waivers  violates the ADA);  Accord in   Radaszewski v. Maram, 383 F.3d 599, 614 (7th Cir. 2004); Townsend v. Quasim, 328 F.3d 511 (9th Cir. 2003); Rolland v. Cellucci, 52 F. Supp. 2d 231, 237 (D. Mass. 1999) (private home care required to be funded under ADA to

meet integration purposes set out by Olmstead.);  28 C.F.R. § 35.130(d).

34.   Cross  Plaintiffs have a place of lodging operated and owned by GLOBAL / PIONEER for commercial purposes.  Cross Plaintiffs  do their own legal research, pleadings, interview witnesses  and perform notary functions  from  their residence.  In addition, due to the  serious nature of MARTI's disabilities,   the state of Wyoming does ongoing medical treatment and community assistive care on a daily basis at Cross Plaintiff's residence/ place of lodging.      Accordingly,   Cross Plaintiff's place of lodging is also a place of public accommodation.

35.   In addition, the  Defendant's businesses  also  constitute  places of public accommodation  under  42 U.S.  Code § 12181(7)(a),(f).   For example, telecommunication services attaching to a physical place of use comes under the aegis of the ADA.  See Cullen v. Netflix, No. 13-15092 (9th Cir. 2014)( Under  Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or  accommodations  of any  place  of  public accommodation." 42 U.S.C. § 12182(a).  **We have previously interpreted the statutory term "place of public accommodation" to require "some connection between the good or service complained of and an actual physical place."** See Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000)); same in Greater Los Angeles Agency on Deafness  v. Time Warner, Inc., No. 12–15807  (9th Cir. 2014);  Save Our Summers v. Washington Department of Ecology,   132 F. Supp. 2d 896 (E.D. Wash. 2000) (ADA applies to the effected  disabled household and  the commercial facility effecting the violations.).   As applied to insurance services,  an insurance office is also precluded  from discriminatorily refusing to  offer its  policies to  disabled persons, for  reasons that would  violate any discriminatory practice under the ADA.  Pallozzi v. Allstate Life Ins. Co., 198 F.3d 28, 31-32 (2d Cir. 1999); see Doe v. Mutual of Omaha Ins. Co.,   179 F.3d 557, 559  (7th Cir. 1999) (stating that Title III of the ADA prohibits an insurance company from refusing to sell an insurance policy to a disabled person by reason of the person's disability or an unlawful practice thereunder.).

36.   Specifically,   Title 42 U.S.C. 12182, and in 28 C.F.R. 36.201 et seq. of the American Disability Act  states:

"(a)   General Rule. No individual shall be discriminated against on the basis of

disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodations by any person who owns, leases {or leases to}, or operates a place of public accommodations."

In reference to Denial of Participation, 42 U.S.C. 12182(b)(1)(A)(I), the ADA in part, states: "It shall be discriminatory to subject an individual... with a disability or disabilities, . . .directly or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual... to participate in or benefit from the gods, services, facilities, privileges, advantages, or accommodations of an entity."

Section II of the above section addresses Participation in Unequal Benefits, as follows: "It shall be discriminatory to subject an individual ... on the basis of a disability or disabilities of such individual... directly or through contractual licensing . . .to a benefit, good, service, facility, privilege, advantage, or accommodation **that is not equal to that afforded to other individuals.**" Id

Specific prohibitions against discrimination towards persons with disabilities are found at 42 U.S.C. 12182(b)(2). Subsections (b)(2)(A) (I through III) specifically preclude **a place of public accommodation from discriminating against individuals with disabilities by:**

**"I. [I]mposing eligibility or other or application criteria that screen out or tend to screen out individuals with disabilities from fully and equally enjoying the goods services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of such goods, services... being offered;**

**II. [F]ailure to make reasonable modifications to the policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities,** unless the entity can demonstrate making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations;" and

**III [F]ailure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals,** unless the entity can demonstrate that taking such steps would fundamentally alter the nature the goods, services, facilities, privileges, advantages or accommodations being offered, or would result in an undue burden...."

The regulations at 28 C.F.R. 36.201, 202, 203, 204 and 28 C.F.R. 36.301, 302 and 303 more fully interpret and implement the requirements and prohibitions contained in 42 U.S.C. 12182 as described above. Also see 28 C.F.R. 36.303, a place of public accommodation must take steps necessary to ensure that no individual with a disability is "excluded, denied services, segregated or otherwise treated differently than other individuals . . ." 28 C.F.R. 36.303(a).

In addition, Civil Rights Act § 706(g) and **42 U.S. Code § 12188 (a) (2)**

Injunctive relief, provide as follows:

> In the case of violations of sections 12182(b)(2)(A)(iv) and section _12183(a) of this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this subchapter.

37. The Defendants have committed all of the forgoing violations. Specifically, the Defendants imposed eligibility or other application criteria to screen out Cross Plaintiffs from fully and equally enjoying the goods services, facilities, privileges, advantages, or accommodations being offered. The defendants failed to make reasonable modifications to their policies, practices, or procedures for subleasing a mobile home lot when such modifications were necessary and required under federal law to afford Cross Plaintiffs enjoyment of such goods, services, facilities, privileges, advantages, or accommodations. Finally, the Defendants [F]ailed to take such steps as may be necessary to ensure that Cross Plaintiffs were not excluded, denied services, segregated or otherwise treated differently than other individuals seeking the same services or accommodations.

38. Cross Plaintiffs are therefore entitled to all compensatory, general, injunctive and punitive damages allowed by law for the defendants ADA violations.

### SECOND CAUSE OF ACTION
(Violation of Fair Housing Amendments Act, 42 U.S. Code § 3601, et seq.;
24 C.P.R. § 100.202(b) Either Directly Or In Conspiracy Against all Defendants)

39. HUD has construed utilities attaching to a dwelling to be subject to the FHA. See exhibit "29" attached hereto. In July of 2012, the USA through HUD entered into a conciliation agreement with a utility company that violated the FHA with regards to persons protected under the act in re HUD v. Huntsville Utilities, HUD CASE NUMBER: 00-12-0006-8. The pertinent parts of that agreement are attached hereto as exhibit "30". The services provided by VERIZON and CENTURYLINK fall in the category of utilities attaching to Cross Plaintiff's protected FHAA dwelling.

40. Courts have also long held that a landlords failure to grant an accommodation to a disabled person under the FHAA which would permit that person to equally enjoy the services and privileges attaching to that dwelling, constitutes a violation of the act. Here, GLOBAL / PIONEER refused to provide Cross Plaintiffs a reasonable accommodation in their sublease policy for their mobile home lot. This type of discrimination has been specifically

outlawed by statute and numerous interpretating courts, Including the US Supreme Court :

      As the Supreme Court explained, "[d]iscrimination covered by the FHA[A] includes **a refusal to make reasonable accommodations.**" *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 729, 115 S.Ct. 1776, 131 L.Ed.2d 801 (1995) (citing 42 U.S.C. § 3604(f) (3)(B)); *DuBois v. Ass'n of Apart. Owners of 2987 Kalakaua, 453 F.3d 1175, 1179* (9th Cir. 2006) (When the claimant shows that he requested a particular accommodation that is both reasonable and necessary to allow him an equal opportunity to use and enjoy the housing in question, **and that accommodation is refused, the claimant will show a violation of the FHAA);** *Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 603 (4th Cir. 1997); There must be a showing that the party charged **refused to make the requested accommodation.** 42 U.S.C. § 3604(f)(3)(B); *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 336 (2d Cir. 1995). C*alero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 25 (1st Cir. 2004) (finding as actionable refusal to grant accommodation).   See too **Canady v. Prescott Canyon Estates Homeowners Association, 60 P.3d 231 (Ariz. Ct. App. 2002):**

      Here, the court found in favor of parents who asserted that a homeowner's association violated the Fair Housing Act by refusing to allow their disabled son to move into their home located in a senior community under the reasonable accommodation rule. The association justified their action pursuant to CCR's which prohibited the housing of any person under the age of 35 in a senior home. The Court held that the reasonable accommodation rule under the FHAA preempted any state law which prevented the use and enjoyment of a dwelling to a disabled person. See 42 U.S.C. § 3615 [expressly commanding that "any law of a State . . . that purports to require or permit any action that would be a discriminatory housing practice under this subchapter **shall to that extent be invalid"**].)

      Title 42 U.S.C. § 3604(f)(3) : A housing provider must grant a requested reasonable accommodation or modification if it is necessary to eliminate barriers to the full use and enjoyment of housing and it does not create an undue financial burden for the housing provider. 42. U.S.C. § 3604(f)(3)(B): **The FHAA makes it unlawful to refuse "to make reasonable accommodation in rules, policies, practices, or services, when such accommodation may be necessary to afford such person equal opportunity to use and enjoy a dwelling."**

      41.   With respect to the retaliation provision of the FHAA, the Park defendants brought the eviction action to retaliate against Cross Plaintiffs for enforcing their accommodations rights under the FHAA to sublease the lot in question.   See (Astralis Condominium Ass'n v. Secretary, Hud, 620 F.3d 62 (1st Cir. 2010):

      The ALJ issued a written decision on September 10, 2009, in which he found that Astralis had **violated the Fair Housing Amendments Act of 1988 (FHAA),**

**Pub.L. No. 10CM30,102 Stat. 1619 (codified as amended at 42 U.S.C. §§ 3601-3619, 3631), by refusing to grant a reasonable accommodation and by unlawfully retaliating against the complainants.** Specifically, Astralis never granted the complainants permission to park in the handicapped spaces nearest to their unit.   **In fact, when the complainants unilaterally parked in those spaces, they received violation notices.** See 42 U.S.C. § 3615 (expressly commanding that "any law of a State . . . that purports to require or permit any action that would be a discriminatory housing practice under this subchapter shall to that extent be invalid").    Held, issuing tickets was a retaliatory action. Title 42 U.S.C. § 3617 provides : Under 42 U.S.C. § 3617, a landlord must not interfere with, coerce, threaten or intimidate tenants in the exercise of their rights under the FHA. 42, U.S.C., Section 3631.

42.   Cross Plaintiffs and counter-claimants assert  that the Park defendants refused to accommodate when they would not execute a written contract that permitted disabled Cross Plaintiffs and counter-claimants to sublease the mobile home lot in question and upon which Cross Plaintiffs approved section 8 dwelling was located.

43   The telecommunication defendants violated the accommodation rule when they refused to contract with   Cross plaintiffs for Life Line services attaching to the subject dwelling.

44.   Defendant  TAYLOR  violated the accommodation rule when she joined the park defendants in their  no color of title claim and thereby interfered with Cross Plaintiff's entitlement to  insurance attaching to  federally  assisted  programs.

45.   All defendants also retaliated against Cross Plaintiffs under the act by engaging in direct eviction actions or   constructive evictions actions through   (1) harassment efforts  and threats to throw Cross Plaintiffs and their household in jail if Cross Plaintiffs would not voluntarily vacate the premises,   (2) terminating Cross Plaintiff's services attaching to the dwelling so that Cross Plaintiffs would voluntarily vacate same, and  the by reporting derogatory credit against Cross Plaintiffs to make it exceedingly difficult for Cross Plaintiffs to fund their medical expenses or  to complete their obligations under the HAP-tenancy contract with the  owner and other service contracts attaching to the  protected  dwelling and household.

46.   Cross  Plaintiffs are  therefore entitled to all compensatory, general, injunctive and  punitive  damages  allowed  by  law  for  the  defendants  FHAA  violations.

## THIRD CAUSE OF ACTION
(Violation of Section 504 Of the Rehabilitation Act , 29 U.S.C. § 794(a) et seq.
Against All Defendants Directly OR By Conspiracy)

47.   The Rehabilitation Act and the ADA prohibit discrimination against qualified disabled individuals by requiring that they receive "reasonable accommodations" that allow them to access and partake in public services and public accommodations which are federally assisted.   Powell, No. 02-9385, 2004 U.S. App. LEXIS 19474, at * 14; see Henrietta D. v. Bloomberg, 331 F.3d 261, 273 (2d Cir. 2003); Felix v. New York City Transit Auth., 324 F.3d 102, 104 (2d Cir. 2003).

Section 504 of the Rehabilitation Act states:
No otherwise qualified individual with a disability in the United States . . . shall, s by reason of her or his disability, **be excluded from the participation in,** be denied the benefits of, or be subjected to discrimination under **any program or activity receiving Federal financial assistance** or under any program or activity conducted by any Executive agency or by the United States Postal Service.   29 U.S.C. § 794.

48.   Here, the Park Defendants excluded Cross Plaintiff's participation in a federal housing program subsidized by HUD  irrespective that Cross Plaintiffs were  to be benefited by that program on an expedited basis as a result of their disabilities.  The telecommunication defendants and their employees interfered with Cross Plaintiff's abilities  to participate in the Life Line cell and/or broadband programs  in spite of  Cross Plaintiff's declared disabilities and low income status – on a claimed basis that Cross Plaintiffs would never be able to afford an attorney to fight the  telecommunication defendants.   TAYLOR denied Cross Plaintiffs the right to insure their private belongings as provided under the HAP and attached tenancy contract by conspiring with the Park defendants to assert a "no color of title right" claim to the property in question which risks increased upon the entry of the "lot" restitution judgment. Defendant THATCHER denied in particular HOLLIE's right to access services at the Green River Post Office by continually engaging in discriminatory conduct through false criminal charges that worked as a constructive eviction against HOLLIE for services at the post office. All of the defendants actions violated section 504 of the Rehabilitation Act because Cross Plaintiffs were denied access to federal assisted programs and services.

49.   Cross Plaintiffs are entitled to all compensatory, general, injunctive and punitive damages allowed by law for violations under section 504 of the Rehabilitation Act.

23

## FOURTH  CAUSE OF ACTION
### (Violation of  the Fair Debt Collection Practices Act, 15 USC 1692e et seq. against  Defendants  VERIZON and CENTURYLINK)

50.   The Fair Debt Collection Practices Act, 15 USC 1692e  prohibits the following relevant conduct:  (2) The false representation of – (A) the character, amount, or legal status of any debt; or; (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.; (10) The use of any false representation or deceptive means to collect or attempt to collect any debt;

Title 15 USC 1692f,  Unfair practices provides:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

Title 15 USC 1692k civil liability provides:

(a)  Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of – (1) any actual damage sustained by such person as a result of such failure;

51.   Defendants VERIZON and  CENTURYLINK committed all  of the foregoing violations.   For example,  there is no question that both telecom defendants mis-stated balances due from HOLLIE on accounts that had been closed.  Moreover,  when HOLLIE's Centurylink account was active,  a small claims judge  verified in January of 2015 that CENTURYLINK had been consistently over billing HOLLIE (on normal rate schedules);  thus warranting an unjust enrichment judgment in HOLLIE's favor.   CENTURYLINK is presently engaging in the same unlawful conduct with Cross Plaintiff MARTI as confirmed by numerous emails with the Wyoming Utilities Commission and defendant  NORMAN.   Further,  both communications giants reported  derogatory credits against Cross Plaintiffs credit reports as a means of extortion. In the instance of HOLLIE,  VERIZON caused HOLLIE to be denied a low interest  loan to refinance expenses concerning MARTI's health care and CENTURYLINK caused HOLLIE to be denied a dental loan to repair HOLLIE's dental plate.

52.  Cross Plaintiffs seek all  actual damages as allowed by law and attorneys fees

and court costs .

## FIFTH   CAUSE OF ACTION
(Violation of   the civil rights act   42  U.S.C. § 1983  and 1985 by Defendants
CHETTERBOCK  and GREEN RIVER POLICE DEPT. and BIVENS by THATCHER)

53.   Cross Plaintiffs  sue  CHETTERBCOK and  the  GREEN RIVER POLICE DEPT.
for acting under color of state  law to deprive Cross Plaintiffs of property rights  without due
process and equal protection.    HOLLIE sues THATCHER for fourth and fifth amendment
violations under  BIVENS.

54.   Specifically, CHETTERBOCK  performing  a  ministerial  duty  concealed  court
records required to be transferred on appeal  for the above stated eviction and incorporated
contempt matters for the   purpose of obstructing the appeal and allowing the defendants
herein to continue their discriminatory practices;  all in violation of Cross Plaintiff due process
and  equal protection rights. In addition,  Cross plaintiffs sought a certified copy of the circuit
court docket for evidentiary purposes.  CHETTERBOCK refused  to give this document to
Cross Plaintiffs without justification claiming the docket to be a privileged record.  Cross
Plaintiffs can find no rule that allows a court docket to be secreted so that parties cannot
identify the dates and times process is supposedly submitted into a record and which refused
production  permits a vehicle for record tampering.   Cross Plaintiffs sue  CHEETERBOCK
for  money damages should CHETTERBOCK alter the court docket before being ordered to
produce same before this court as evidence.  Cross Plaintiffs also sue CHETTERBOCK for
declaratory relief decreeing that court dockets are not privileged records and as such are
required  to  be  produced  upon  request  of  a  litigating  party.  Finally  after  entry  of  this
declaration,   Cross Plaintiff sue CHETTERBOCK for injunctive relief requiring now and in the
future that CHETTERBOCK and other circuit courts equally situated  in Wyoming be required
to produce a court docket upon demand by any member of the public.

55.   Cross Plaintiffs sue the GREEN RIVER POLICE DEPT for a declaratory decree
that this Department cannot interfere with Cross Plaintiffs use of any public facility to include
their dwelling premises or the US Post office in Green River, WY and for an injunction
enjoining that practice.   Furthermore,  Cross Plaintiff HOLLIE also seeks money damages
against the GREEN RIVER POLICE DEPT. for ongoing threats of arrest in violation of the first
and fourth amendments, for  unlawful detentions  performed  by  various  doe  officers  of  it's

facility in accordance with a policy established by one of it's directing officials Sargent Mark McDonald in violation of HOLLIE's fourth amendment rights,  and for first amendment retaliation in preventing   HOLLIE   from peaceably assembling at places of public accommodation to engage in lawful conduct in violation of the first amendment.

56.   HOLLIE sues THATCHER under the first amendment for preventing HOLLIE from peacefully assembling at the Green Rive Post Office,  under the Fourth amending for numerous seizures and detentions of her person without probable cause,  and under the fifth amendment for deprivation of her property rights to use the Green River Post Office under color of law and without due process.

## SIXTH  CAUSE OF ACTION
(For Declatory Relief Under 28  U.S.C. § 2201 Against all  Defendants)

54.   Cross Plaintiffs seek declaratory relief against all defendants decreeing their actions unlawful and to strike down any efforts in the future to engage in these unlawful actions.

## SEVENTH  CAUSE OF ACTION
(Defamation against CENTURYLINK and VERIZON)

55.   Cross Plaintiffs alleged that CENTURYLINK and VERIZON defamed them through their unlawful debt reporting activities.  Specifically:

(1)  The Defendants made a false and defamatory communication concerning the Cross Plaintiffs;  and

(2)  The Defendants made unprivileged publications to third parties, i.e credit reporting agencies and lenders;  and

(3)  At the time of publication:
(a)  The Defendants knew that the communications were false, or
(b)  The Defendants acted in reckless disregard of whether the communications were  false, and

(4)  Cross Plaintiffs suffered a loss of something having economic or pecuniary value as a result of the publications.

56.   As the foregoing records shows these telecommunication defendants literally fabricated false debts against Cross Plaintiff HOLLIE on closed accounts.  The defendants actions injured Cross Plaintiff HOLLIE's ability to sustain favorable rates on loans. Accordingly

HOLLIE seeks all compensatory, general and punitive damages as allowed by law.

### EIGHTH CAUSE OF ACTION
(False Imprisonment Against VERIZON AND CORDINGLY)

57. False imprisonment is the unlawful [restraint] [detention] by one person of the physical liberty of another without consent or legal justification.

58. The record shows that VERIZON and CORDINGLY caused HOLLIE to be detained and deprived of her liberty without consent for alleged criminal trespassing when HOLLIE returned the VERIZON devices. The charge was summarily dismissed because the prosecutor concluded that HOLLIE had a privilege to be on the premises and to return the merchandize. Hence a determination was already made that there was no legal justification for HOLLIE's false imprisonment. HOLLIE seeks all compensatory, general and punitive damages as allowed by law for her false imprisonment committed by VERIZON and CORDINGLY.

### NINTH CAUSE OF ACTION
(Intentional Interference with Contract Against GLOBAL /PIONEER, CLAYTON & TAYLOR )

59. The following elements must be shown to sustain a claim for intentional or tortious interference with a contract.

> (1) The existence of a valid contractual relationship or business expectancy;
> (2) Knowledge of the relationship or expectancy on the part of the defendant;
> (3) Intentional and improper interference by defendant, [who is a non-party to the contract] inducing or causing a breach or termination of the contract;
> (4) Resultant damage to the party whose contract has been disrupted

60. As shown by the foregoing allegations, a valid contract/voucher relationship existed with Rock Springs Housing Authority as an agent for HUD. GLOBAL /PIONEER and CLAYTON had knowledge of that contract. On July 3, 2014, GLOBAL /PIONEER and CLAYTON improperly interfered with those contracts inducing their termination. Cross Plaintiff's suffered significant and resultant damages as a direct result of their disrupted contracts. GLOBAL /PIONEER and CLAYTON owe compensatory, general and puntive damages as a result of this tortious interference.

61. Defendant TAYLOR conspired with the PARK defendants to interfere with Cross Plaintiff's insurance contract attaching to the subject premises. The insurance contract

was valid,  TAYLOR knew of this contract's existence, TAYLOR who was not a party to that contract  intentionally interfered with the performance thereof  by inducing a termination, and Cross plaintiffs have been accordingly damaged thereby.     Cross Plaintiffs seek all compensatory, general, punitive and injunctive remedies as allowed by law.

TENTH CAUSE OF ACTION
(Abuse of Process by all defendants)

62.    To prevail on an abuse of process claim,  Cross Plaintiffs must establish the following:

(1)   the defendant had an ulterior purpose; and
(2)   the defendant engaged in a willful act in the use of the legal process not proper in the regular conduct of the proceeding.

63.    The PARK defendants abused the process by bringing an eviction action in the state of Wyoming with knowledge that Cross Plaintiffs would not be able to assert affirmative defenses for file cross complaints or counter claims.    The PARK defendants actions were taken with the ulterior purpose of defeating Cross Plaintiff's claims against themselves and all other cross defendants  through an eviction judgment  which all defendants had intended to use under a theory of offensive collateral estoppel.   The use of the legal process in this manner was not regular,  was specifically enjoined by federal law vis-a-vis  42 U.S.C. § 3615 ["any law of a State . . . that purports to require or permit any action that would be a discriminatory  practice under this subchapter **shall to that extent be invalid"**],  and caused Cross Plaintiffs significant ad substantive damages.

64.    Cross Plaintiffs seek all  compensatory, general, punitive and injunctive remedies as allowed by law.

WHEREFORE PLAINTIFFS PRAY FOR THE FOLLOWING:

1.   For all compensatory, general and  punitive damages as allowed by law;
2.   For actual damages as allowed by law;
3.   For all declaratory and injunctive relief as allowed by law;
4.   For attorneys fees and court costs as allowed by law;
5.   For Pre and post judgment interest,  and
6.   For trial by jury.

Dated :  February 22, 2016    _____        _____
                                              Hollie Telford                              Marti Lundahl

28
